Paul M. THOMAS, Plaintiff,

v.

PACIFIC NORTHWEST BELL TELEPHONE COMPANY, a Washington Corporation, Defendant.

Billy C. RENZ, Plaintiff,

v.

PACIFIC NORTHWEST BELL TELEPHONE COMPANY, a Washington Corporation, Defendant.

Civ. Nos. 75–958 and 75–959.

United States District Court, D. Oregon.

March 23, 1977.

Sidney I. Lezak, U.S. Atty., Jeffrey L. Rogers, Asst. U.S. Atty., Dist. of Oregon, Portland, Ore., for plaintiffs.

William H. Replogle, Portland, Ore., for defendant.

## OPINION

### JURISDICTION AND PROCEDURE

SKOPIL, Judge:

These are actions under 38 U.S.C. §§ 2021[1] and 2022,[2] brought by two veterans seeking promotions and back pay which they claim were denied them due to their induction and subsequent military service.

1. 38 U.S.C. § 2021 provides in relevant part:

"(a) In the case of any person who is inducted into the Armed Forces of the United States . . . and who leaves a position . . . and (1) [satisfactorily completes military service], and (2) makes application for reemployment within ninety days after such person is relieved from such training and service . . .

"(B) if such position was in the employ of . . . a private employer, such person shall—

"(i) if still qualified to perform the duties of such position, be restored by such employer . . . to such position or to a position of like seniority, status, and pay; . . . unless the employer's circumstances have so changed as to make it impossible or unreasonable to do so. . . .

"(b)(1) Any person who is restored to . . . a position in accordance with [subsection (a)] shall be considered as having been on furlough or leave of absence during such person's period of training and service in the Armed Forces, [and] shall be so restored . . . without loss of seniority . . . . .

"(2) It is hereby declared to be the sense of the Congress that any person who is restored . . . in a position . . . should be so restored . . . in such manner as to give such person such status in his employment as he would have enjoyed if such person had continued in such employment continuously from the time of such person's entering the Armed Forces until the time of such person's restoration to such employment . . . . ."

2. 38 U.S.C. § 2022 provides in relevant part:

"If any . . . private employer . . . fails or refuses to comply with the provisions of [38 U.S.C. § 2021; see footnote 1, *supra*], the district court of the United States for any district in which such private employer maintains a place of business . . . shall have the power . . . specifically to require such employer to comply with such provisions and to compensate [the aggrieved veteran] for any loss of wages or benefits suffered by reason of such employer's unlawful action. . . .

"Upon application to the United States attorney . . . by any person claiming to be entitled to the benefits provided for in such provisions, such United States attorney . . ., if reasonably satisfied that the person so applying is entitled to such benefits, shall appear and act as attorney for such person . . . . .

"No fees or court costs shall be taxed against any person who may apply for such benefits. . . . ."

[Indentation added for convenience of reader.]

Since both actions involve the same defendant employer and most of the same issues of fact and law, the actions were consolidated for trial. Fed.R.Civ.P. 42(a).

Plaintiffs were represented by the United States Attorney for this district. See 38 U.S.C. § 2022, *supra*. Defendant employer, Pacific Northwest Bell Telephone Company (PNWB), appeared by its counsel. The parties stipulated to extensive agreed facts in the pretrial orders. See Local Rule 19(b)(4). Each party submitted written witness statements in lieu of direct testimony as to most witnesses. The opposing party then had the opportunity, of course, to cross-examine witnesses for whom statements were submitted. This live cross-examination gave me the opportunity to observe demeanor and evaluate credibility of the witnesses.

During the trial the parties made objections to certain portions of the witness statements and to certain exhibits. I reserved ruling on all objections. My decisions on the objections are attached as an appendix to this opinion.

Counsel for both parties were quite cooperative in this efficient procedure for conducting court-tried cases. Further, the trial memoranda filed by each side were very helpful to me in deciding the merits of these actions.

## FACTUAL BACKGROUND AND CONTENTIONS

### General

Most of the relevant facts are not in dispute. PNWB provides telephone and other communication services for most of the Pacific Northwest. It maintains central switching facilities at a number of locations here in Portland, Oregon. Among the positions assigned to these central offices are "Framemen" and "Switchmen" (also known as "Central Office Equipment Men" or "C.O.E.M."). Prior to January, 1973, Frameman was considered by PNWB to be an entry-level, non-technical position. The Switchman position required knowledge of electricity and electronics. When employees were designated as Switchmen, they were given specialized training prior to actually performing Switchman duties. The Switchman position, of course, qualifies for a higher pay scale than the Frameman position.

In January, 1973, PNWB entered into an agreement with the Equal Employment Opportunity Commission (EEOC). As a result of this agreement, PNWB's hiring and promotion practices were changed throughout its entire operation, as well as with respect to the Frameman and Switchman positions. The purpose of the agreement was to promote equal employment opportunity for women and members of minority groups, who began to receive the benefits of an "affirmative action" policy. Plaintiffs are both white males.

### Plaintiff Paul M. Thomas

Plaintiff Thomas first went to work for PNWB in April, 1970, as a building custodian. In January, 1971, he was drafted. In

October, 1972, he received an Honorable Discharge from the U.S. Army and promptly applied to PNWB for reemployment. PNWB immediately rehired Thomas, again as a building custodian.

At some point after his reemployment, Thomas sought the assistance of the U.S. Department of Labor in pursuing a claim that he should have been reemployed as a Frameman or Switchman rather than as a building custodian. Following various communications among the Department of Labor, PNWB, and Thomas, it was agreed by all concerned in January, 1974 that Thomas would be promoted to a Frameman position with retroactive seniority to April, 1971 (a time during which he was still on active duty). It was also agreed that PNWB would pay Thomas for the overtime he would have worked as a Frameman for the period beginning with his reemployment in October, 1972, and ending with his actual designation as a Frameman in January, 1974. Pursuant to this agreement, PNWB paid Thomas additional gross wages of $1,367.89.

In his present action Thomas contends that had he not been on military leave of absence, he would have been promoted to Switchman on or about January 23, 1972. He seeks an order compelling PNWB to designate him as a Switchman, with seniority as of January 23, 1972. He also seeks judgment for lost wages equaling the difference between his actual wages and what he would have earned had he been reemployed as a Switchman immediately upon his return from military service in October, 1972.

PNWB's defense to Thomas' claim is that Thomas was not and is not qualified to be a Switchman and that Thomas would not have been promoted to Switchman even if he had not been drafted. In any event, PNWB argues, the promotion to Frameman and payment of lost overtime constitutes full settlement and satisfaction of any claim Thomas may have had.[3] Thomas' re-

---

**3.** Defendant has apparently abandoned its defense, interposed in its answer to Thomas' complaint, that Thomas waived or settled his claim by later requesting transfer back to a building custodian position after promotion to Frameman. This contention appears neither in the pretrial order nor PNWB's trial memorandum.

sponse is that the promotion to Frameman was understood and intended to be only a partial adjustment of his reemployment status and that the question of promotion to Switchman was to be left for further discussion.

*Plaintiff Billy C. Renz*

Plaintiff Renz was originally hired by PNWB for the temporary position of "Installer-Repairman" in November, 1969. In June, 1970, Renz was transferred into a permanent position as Frameman. In December, 1970, Renz was drafted. In September, 1972, he received an Honorable Discharge from the U.S. Army and promptly applied for reemployment with PNWB. Finally, in October, 1972, Renz was rehired as a Frameman.

In this action Renz contends that had he not been absent from work due to military service, he would have been promoted to Switchman on or about March 21, 1971. He seeks an order compelling PNWB to promote him to Switchman, with seniority as of that date. He also seeks judgment for lost wages equalling the difference between his actual wages and what he would have earned had he been reemployed as a Switchman immediately upon his return from active duty.

PNWB concedes that Renz was and is sufficiently competent to be designated as a Switchman. Pretrial Order, Agreed Facts, at p. 3. PNWB contends, however, that it is not reasonably certain that Renz would in fact have been promoted to Switchman even if he had remained continuously in PNWB's employ.

## DISCUSSION

Cases interpreting the predecessors of the statute in issue here (38 U.S.C. § 2021, *supra*) establish what is known as the "escalator principle" of veterans' reemployment rights. As stated by the Supreme Court in the earliest of these cases, the returning draftee

". . . does not step back on the security escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war." *Fishgold v. Sullivan Drydock & Repair Corp.*, 328 U.S. 275, 284–5, 66 S.Ct. 1105, 1111, 90 L.Ed. 1230 (1946).

Congress approved the "escalator principle" by enacting what is now 38 U.S.C. § 2021(b)(2). *Tilton v. Missouri Pac. R. Co.*, 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964).

The use in the statute of such bare, undefined language as "seniority" or "status", however, fails to disclose the specific nature of the benefits which Congress seeks to protect. As recently stated by the Court of Appeals:

"It may be obvious that a physician who leaves an internship to serve in the Armed Forces is not entitled to return as head resident, but most of the problems which courts have confronted are not as easily solved." *Smith v. IEDA*, 546 F.2d 314, 317 (9th Cir., 1977).

Numerous cases make it clear that an employer is not to deny a returning draftee any seniority, promotions, changes in status, raises in pay, etc., which the veteran would have *automatically* received had his employment not been interrupted by military service. The statute requires that the veteran receive those benefits which would have been his "simply by virtue of continued employment". *McKinney v. Missouri-Kansas-Texas R. Co.*, 357 U.S. 265, 271–2, 78 S.Ct. 1222, 1226, 2 L.Ed.2d 1305 (1958). Therefore,

". . . on application for re-employment a veteran is not entitled to demand that he be assigned a position higher than that he formerly held when promotion to such a position depends, not simply on seniority or some other form of automatic progression, but on the exercise of discretion on the part of the employer." *Id.*, at 272, 78 S.Ct. at 1227.

See *Foster v. Dravo Corp.*, 420 U.S. 92, 95 S.Ct. 879, 43 L.Ed.2d 44 (1975).

■ The veteran is not required to show that he *necessarily* would have received any benefit in issue had he not been drafted. Rather, it is sufficient to show that at the time he left the employment it was *reasonably certain* that the change of status would have occurred. *Tilton v. Missouri Pac. R. Co.*, 376 U.S. 169, 84 S.Ct. 595, 11 L.Ed.2d 590 (1964); *Brooks v. Missouri Pac. R. Co.*, 376 U.S. 182, 84 S.Ct. 578, 11 L.Ed.2d 599 (1964).

■ After careful consideration of the evidence, I find that it is reasonably certain that if the plaintiffs had not left PNWB's employ for military service, both would have been promoted to the position of Switchman at some point prior to their return to work in October, 1972. While there are some conflicts, plaintiffs have presented substantial evidence that prior to the EEOC agreement in January, 1973, PNWB promoted Framemen assigned to the Oak Street facility (where both plaintiffs worked prior to being drafted) to Switchman positions essentially in order of seniority. Prior training and experience were at most minor factors in the promotion decisions since newly designated Switchmen received specialized training from PNWB.

While I find by a preponderance of the evidence that both plaintiffs would probably have been promoted on an essentially automatic basis, I find that the evidence is especially convincing as to plaintiff Renz. In this regard, I have considered both out-of-court admissions and in-court testimony by PNWB representatives that Renz would have been promoted if he had not gone into the service. One PNWB witness, Mr. A. R. Sievertsen, specifically so testified on cross-examination. He also stated that employees less qualified than Renz were promoted from Frameman to Switchman after Renz was drafted and that these employees were women or members of minority groups.

I have some difficulty, however, in determining just when plaintiffs would have been promoted. The Frameman to Switchman advancements were approximately in order of seniority as Frameman, but the evidence does disclose some exceptions. The evidence also shows that both plaintiffs failed to take advantage of PNWB training programs (including company correspondence courses and tuition grants for courses taken at local colleges) to the same extent as some of their co-workers. For this reason I am persuaded that PNWB might well have exercised its managerial discretion (see *McKinney v. Missouri-Kansas-Texas R. Co., supra*) in delaying the promotions of plaintiffs beyond the point their seniority would have otherwise dictated. Plaintiffs thus have not carried their burden of showing at what point in time earlier than their return to work PNWB would have promoted them. Accordingly, I will direct that plaintiffs be promoted to Switchmen, but with seniority dating from their respective dates of reemployment following military service.

■ A remaining issue is PNWB's contention that plaintiff Thomas settled his claim by virtue of the agreed-upon promotion from building custodian to Frameman and payment by PNWB of lost overtime. I find that it was the intention of the parties that the agreement left open the question of whether Thomas was entitled to promotion to Switchman (following the promotion to Frameman with retroactive seniority, as agreed upon). In this regard, I find persuasive the testimony of Ms. Luanne Kneeland of the U.S. Department of Labor, which represented Thomas during the negotiations. I find especially persuasive a handwritten memorandum prepared at the time of settlement by Mr. Drew C. Smith, who represented PNWB during the negotiations. The memorandum states in part:

"Luanne Kneeland advises that Paul Thomas accepts the terms of the settlement offer . . .

"*The issue of the COEM* [Central Office Equipment Man or Switchman; see FACTUAL BACKGROUND AND CONTENTIONS, *supra*] *position will be resolved in connection with the Billy Renz case*." Pl.Ex. 7 (emphasis added).

## AGREEMENT WITH EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

While it is not necessary for a complete disposition of the contentions of the parties, I feel constrained to make a few comments concerning the effect on plaintiffs of the agreement between the EEOC and PNWB (discussed *supra*). The specific terms of the agreement are not before me on this record, but it is clear that the effect of the agreement was to prevent plaintiffs from being advanced to Switchman positions. There is also evidence that persons less qualified than plaintiffs (or at least less qualified than plaintiff Renz) were so advanced because they were female or members of minority groups.

The salutary purpose of Title VII of the Civil Rights Act is to insure that no person is deprived of equal employment opportunities due to his or her sex, race, or other improper classification. The salutary purpose of the statute involved in these actions, 38 U.S.C. § 2021, is to insure that a person who answers his country's call to arms is not required to forfeit civilian employment benefits following separation from active duty. See *Fishgold v. Sullivan Drydock & Repair Corp., supra*.

I see no necessary conflict between the policies furthered by these respective statutes. I am certain, however, that as to each statute Congress did not intend to reward mediocrity or require promotions based on factors other than merit, which, in its broad sense, includes seniority with or loyalty to a given employer.

By making these comments I do not mean to suggest that the employees promoted in preference to plaintiffs are in any way incompetent or unworthy of advancement. My purpose is only to make clear that while I find against the defendant employer in these actions, I recognize the difficulties that an employer has in attempting to comply with pervasive governmental regulation of the employer-employee relationship.

## CONCLUSION

Counsel for plaintiffs should prepare a form of judgment in conformity with this opinion. The judgment should order that plaintiffs each be promoted to the position of Switchman forthwith, with seniority as Switchman as of their respective dates of returning to work for PNWB after military service. The judgment should provide that PNWB may demote plaintiffs to their present positions if they prove unqualified as Switchmen.[4] The parties should attempt to agree upon the amount of lost wages as to each plaintiff, which amounts should be incorporated in the judgment.

Counsel should notify me within ten days after this opinion is filed if they are unable to agree upon a form of judgment or amount of money judgment.

This opinion constitutes findings of fact and conclusions of law pursuant to Fed.R. Civ.P. 52(a).

## APPENDIX

Plaintiff Renz's objections to defense exhibits (in 75–959) B (p. 2), C, D, E, and F are overruled. Each such exhibit was adequately identified or authenticated. I gave each exhibit such consideration as was appropriate. Plaintiff's objections go more to the weight than the relevancy of the evidence.

Plaintiff Thomas' objections to defense exhibits (in 75–958) D (p. 2), E, F, G, and H are overruled for the same reasons.

Plaintiffs' objections to the direct testimony of witnesses Rickman and Sievertsen (question 37) are overruled. I have not been misled by what are arguably "legal conclusions" by the witnesses.

---

4. If such a demotion occurs, the plaintiff or plaintiffs affected may, of course, seek relief in this court if they feel that the demotion was improper.