**William R. HULET, Appellant,**

v.

**REVIEW BOARD OF the INDIANA EMPLOYMENT SECURITY DIVISION, William H. Skinner, David L. Adams, and Paul M. Hutson, Constituting the Review Board of the Indiana Employment Security Division, and Chrysler Corporation, Appellees.**

**No. 2–680A186.**

Court of Appeals of Indiana,
Fourth District.

Nov. 17, 1980.

Richard L. Zweig, McClure, McClure & Kammen, Indianapolis, for appellant.

Theodore L. Sendak, Atty. Gen., Stephen J. Cuthbert, Deputy Atty. Gen., Indianapolis, for appellees.

CHIPMAN, Judge.

Claimant William R. Hulet appeals from the denial of his application for a trade readjustment allowance available under the federal Trade Act of 1974. The Review Board of the Indiana Employment Security Division found Hulet ineligible for Trade Act benefits because he had not worked 26 of the 52 weeks preceding his separation from adversely affected employment.

We reverse.

The issue presented by this appeal involves the eligibility of an honorably discharged veteran for trade readjustment allowance benefits under the federal Trade Act of 1974, Pub.L. 93–618, 19 U.S.C. § 2271 *et seq.* ["Trade Act"]. Generally, the Trade Act provides a variety of benefits to workers who lose their jobs due to the increased importation of various foreign products. These benefits, which include the payment of a "trade readjustment allowance," 19 U.S.C. § 2291 ["TRA"], are available to adversely affected workers whom the Secretary of the U.S. Department of Labor certifies to have lost their jobs because of a decrease in production or sales caused by "increases of imports of articles like or directly competitive with articles produced by such workers' firm." 19 U.S.C. § 2272. Once the Secretary certifies a group of employees to be eligible for Trade Act bene-

fits, an individual member of the group becomes eligible if his or her separation from employment occurred after the Secretary certified the group of workers to be employed in adversely affected employment and before expiration of the certification period. 19 U.S.C. § 2291(1)(A), (B). Additionally, the worker must have logged, in the fifty–two (52) week period preceding his separation from work, "at least 26 weeks of employment at wages of $30 or more per week in adversely affected employment with a single firm or subdivision of a firm . . . ." 19 U.S.C. § 2291(1)(A). This appeal focuses on the 26 week eligibility requirement.

Claimant Hulet was employed by Chrysler Corporation from mid–1973 until August 20, 1976, when he enlisted in the U.S. Marine Corps. After three years of service he received an honorable discharge from active duty. In August of 1979, Hulet applied for reinstatement with Chrysler. He reported to Chrysler, but in accordance with the position of others with his seniority, was put on lay–off status due to the lack of available work. On October 15, 1979, claimant was called back to Chrysler and worked for six weeks before he was again laid–off on November 23. Effective November 1, 1978, the Secretary of Labor certified all employees of Chrysler Corporation's Kokomo Transmission Plant as "adversely affected" workers within the meaning of 19 U.S.C. § 2272, and thus eligible for TRA benefits.

Hulet filed his application for TRA benefits with the Indiana Employment Security Division, the state agency which administers the federal assistance program. The Division's Review Board ultimately denied Hulet's application because, in the Board's opinion, the claimant had only six weeks of employment in which he earned $30 or more prior to his separation from employment, instead of the 26 weeks required by section 2291(1)(A) of the Trade Act. Claimant now appeals from the Review Board's decision, and we reverse.

Hulet concedes a limited reading of the Trade Act alone leads one to conclude he was not employed in "adversely affected"

industry for 26 of the 52 weeks preceding his layoff in November of 1979 and therefore did not meet the individual eligibility requirements for TRA benefits. However, Hulet argues the Board incorrectly determined his eligibility for TRA without appropriate reference to two other federal statutory provisions, specifically, the Veterans' Reemployment Rights Act, Pub.L. 93–508, 38 U.S.C. § 2021 *et seq.*, a part of the Vietnam Era Veterans' Readjustment Assistance Act of 1974, and 38 U.S.C. § 2013, a section of the Vietnam Era Veterans' Readjustment Assistance Act of 1972 dealing with eligibility requirements for veterans under federal manpower training programs. Hulet contends this related legislation establishes his right to Trade Act benefits. We turn first to the Veterans' Reemployment Rights Act. ["VRRA"].

## I. Veterans' Reemployment Rights Act

The VRRA was enacted to protect veterans returning to their civilian jobs from being disadvantaged for having served in the armed forces.[1] *Schaller v. Board of Ed. of Elmwood Local School Dist.*, 449 F.Supp. 30 (D.C. Ohio 1978); *Beckley v. Lipe–Rollway Corp.*, 448 F.Supp. 563 (D.C.N.Y.1978); *Thomas v. Pacific Northwest Bell Tel. Co.*, 434 F.Supp. 741 (D.C.Or.1977). Section 2021 of the Act grants any person inducted into the armed forces the right, if still qualified, to be reinstated by his employer "to such position or to a position of like seniority, status, and pay . . . ." 38 U.S.C. § 2021(a)(B)(i). In section 2021(b)(2) Congress codified the so–called "escalator principle,"[2] giving the returning veteran the right to be reemployed

"in such manner as to give such person such status in the person's employment as the person would have enjoyed if such person had continued in such employment continuously from the time of such person's entering the Armed Forces until the time of such person's restoration to such employment, or reemployment."

Section 2024 of the VRRA grants to persons who enlist the same reemployment rights as those inducted involuntarily.[3]

As the VRRA requires a veteran be reemployed with the "seniority" and "status" he would have held had he been continuously employed during the period of his military service, Hulet argues he in effect satisfied the Trade Act's 26 week work requirement during the time he served in the U.S. Marine Corps. The argument certainly has its appeal. We acknowledge the VRRA is to be liberally construed in favor of the returning veteran. *Coffey v. Republic Steel Corp.*, (1980) —— U.S. ——, 100 S.Ct. 2100, 65 L.Ed.2d 53. Furthermore, to the extent a general policy determination is relevant, it is only logical to conclude that if Congress thought it desirable to guarantee employment rights for a returning veteran by requiring his employer to reinstate him

---

1. The original statute establishing reemployment rights for veterans was the Selective Training and Service Act of 1940. After several name changes, the Act was renamed again in 1971 as the Military Selective Service Act, 85 Stat. 348, found at 50 U.S.C.App. § 459. The reemployment provisions of the Military Selective Service Act were codified with non–substantive wording changes in the Vietnam Veterans' Readjustment Act of 1974.

2. *See Fishgold v. Sullivan Corp.*, (1946) 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230.

3. 38 U.S.C. § 2024(a) provides:
   § 2024. Rights of persons who enlist or are called to active duty; Reserves
   (a) Any person who, after entering the employment on the basis of which such person claims restoration or reemployment, enlists in the Armed Forces of the United States (other than in a Reserve component) shall be entitled upon release from service under honorable conditions to all of the reemployment rights and other benefits provided for by this section in the case of persons inducted under the provisions of the Military Selective Service Act (or prior or subsequent legislation providing for the involuntary induction of persons into the Armed Forces), if the total of such person's service performed between June 24, 1948, and August 1, 1961, did not exceed four years, and the total of any service, additional or otherwise, performed by such person after August 1, 1961, does not exceed five years, and if the service in excess of four years after August 1, 1961, is at the request and for the convenience of the Federal Government (plus in each case any period of additional service imposed pursuant to law).

in a position and status comparable to that which he would have attained had employment been continuous, Congress would also desire to afford similar treatment for the veteran with regard to eligibility requirements for federal unemployment assistance programs such as the Trade Act of 1974. However, the VRRA quite clearly addresses the rights of a returning veteran vis–a–vis *his employer*. The Act creates the right to reinstatement with proper "seniority, status and pay." It guarantees a proper determination of pension benefits, *Beckley v. Lipe–Rollway Corp.*, 448 F.Supp. 563 (D.C.N.Y. 1978), vacation benefits, *Chernoff v. Pandick Press, Inc.*, 440 F.Supp. 822 (D.C.N.Y. 1977), promotion opportunities, *Thomas v. Pacific Northwest Bell Tel. Co.*, 434 F.Supp. 741 (D.C.Or.1977), transfer opportunities, *Barrett v. Grand Trunk Western R. Co.*, 581 F.2d 132 (7th Cir. 1978) and other prerequisites of seniority. But the VRRA simply does not address the rights of a returning veteran with regard to eligibility for federal unemployment assistance or job training programs. While the general Congressional policy of protecting veterans returning to their civilian jobs from being disadvantaged for having served their country is undoubtedly consistent with the claimant's proposed application of the VRRA in the present case, this court, as an adjudicatory and not a legislative body, certainly cannot extend the application of the Act beyond its scope or purview. We are therefore drawn to the conclusion that the VRRA does not establish Hulet's eligibility for TRA benefits in this case.

II. Section 2013 of the Veterans' Readjustment Assistance Act of 1972

In addition to his argument concerning the Veterans' Reemployment Rights Act, Hulet contends his eligibility for TRA benefits is also established by 38 U.S.C. § 2013, a provision of the Vietnam Era Veterans' Readjustment Assistance Act of 1972. Section 2013 provides in relevant part:

"Any (1) amounts received as pay or allowances by any person while serving on active duty, (2) *period of time during which such person served on such active duty . . . shall be disregarded in determining the* needs or *qualifications of participants in any public service employment program*, any emergency employment program, any job training program assisted under the Economic Opportunity Act of 1964, any manpower training program assisted under the Manpower Development and Training Act of 1962, *or any other manpower training (or related) program financed in whole or in part with Federal funds.*" (emphasis added)

Hulet argues the Federal Trade Act is a "manpower training (or related) program" financed exclusively by the federal government, and pursuant to section 2013, his period of military service must be disregarded in determining his qualifications for TRA benefits. Under this view, Hulet argues, the effect of section 2013 is to carry forward the period of his pre–enlistment employment with Chrysler to the day he was discharged from the Marine Corps, thereby satisfying the requirement a claimant must have worked 26 of the 52 weeks preceding his separation from adversely affected employment. We believe Hulet's interpretation of section 2013 is correct.

First, the legislative history of section 2013 shows the provision was enacted to facilitate the entry of a greater number of veterans into federal job training and related programs. *See* S.Rep. 92–988 *reprinted in* [1972] U.S. Code Cong. & Ad. News, p. 4331. Furthermore, the Trade Act is without question a "related" job training program financed with federal funds. Section 2296(a) of the Trade Act authorizes the Secretary of Labor to "approve" job training programs in instances where the Secretary determines there is no suitable employment available for workers separated from adversely affected employment. Section 2296(b) authorizes the Secretary to supply supplemental assistance necessary to defray transportation and subsistence expenses for separate maintenance when training for a worker is provided at facilities which are not within commuting distance of the worker's residence. Section 2297 provides for a

job search allowance. Section 2292(b) states that a trade readjustment allowance paid under the Trade Act is "in lieu of any training allowance to which the worker would be entitled under . . . other Federal law."

Accordingly, claimant Hulet's period of active duty with the Marine Corps must be disregarded in determining his eligibility for Trade Act benefits. Hulet's pre–enlistment employment with Chrysler must be considered in determining whether the claimant worked 26 of 52 weeks preceding his November 23, 1979 separation. The decision of the Review Board is, therefore, reversed and this cause is remanded for further proceedings consistent with this opinion.

YOUNG, P. J., and MILLER, J., concur.