INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, et al., Plaintiffs,

v.

Raymond J. DONOVAN, Defendant.

Civ. A. No. 82-3137.

United States District Court, District of Columbia.

Jan. 17, 1983.

John A. Fillion, Leonard Page, Detroit, Mich., Stephen P. Berzon, Trino Grillo, Altshuler & Berzon, San Francisco, Cal., A.L. Zwerdling, Wendy L. Kahn, Zwerdling, Schlossberg, Leibig & Kahn, Washington, D.C., for plaintiffs.

Mark C. Rutzick, Joel A. Mullin, Civ. Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

HAROLD H. GREENE, District Judge.

The Trade Act of 1974, 19 U.S.C. § 2101 *et seq.*, provides federally funded benefits, including Trade Readjustment Allowances (TRA), to workers laid off because of a decline in sales or production by the firms employing them due to competition from imports.[1] This assistance program is fully funded by the federal government, but it is administered by state unemployment insurance agencies which act as agents of the United States.[2] 19 U.S.C. § 2311. Overpayments appear to have been not uncommon and prior to August 13, 1981, the Act provided for repayment by the worker of any such overpayment only where fraudulent conduct was involved.[3] In 1981, as

---

1. Under the 1974 Act, once the Secretary certified a group of workers as eligible to participate in the Trade Act program, an adversely affected worker who qualified for TRA became eligible to receive a benefit equal to 70 percent of his previous average weekly wage, not to exceed the average weekly manufacturing wage, reduced by other benefits received and 50 percent of other earnings. A participant was entitled to 52 weeks of TRA benefits, and an additional 26 weeks if enrolled in training approved by the Secretary. 19 U.S.C. §§ 2292, 2293 (1976).

The individual plaintiffs in this action are all workers in the automobile industry who lost their jobs because of competition from imports. They have been found to have received overpayments of TRA benefits, but no allegation of fraudulent conduct has been made against them. While it is not known how many members of the plaintiff union may have received

overpayments, over 600,000 members have been certified as eligible for TRA benefits. (Declaration of Trina Grillo, counsel for International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, December 1, 1982.)

2. The Secretary has entered into agreements with unemployment insurance agencies in every state.

3. Section 243 of the Trade Act provided:

If a cooperating State agency or the Secretary or a court of competent jurisdiction finds that any person—
(1) has made or has caused to be made by another, a false statement or representation of a material fact knowing it to be false, or has knowingly failed or caused another to fail to disclose a material fact; and

part of the Omnibus Budget Reconciliation Act, Pub.L. 97–35, Congress enacted major amendments to the Trade Act. These amendments had the primary effect of substantially reducing the scope of TRA benefits,[4] but they also authorized recoupment of overpayments in non-fraud cases. Section 2315(a)(1) now provides:

If a cooperating State agency, the Secretary, or a court of competent jurisdiction determines that any person has received any payment under this part to which the person was not entitled, including a payment referred to in subsection (b) of this section [relating to fraud], such person shall be liable to repay such amount to the State agency, or the Secretary, as the case may be, *except that the*

*State agency or the Secretary may waive such repayment if such agency or the Secretary determines, in accordance with guidelines prescribed by the Secretary, that—*

(A) the payment was made without fault on the part of such individual; and

(B) *requiring such repayment would be contrary to equity and good conscience.* 19 U.S.C. § 2315(a)(1) (emphasis added).[5]

The Secretary has never issued the guidelines contemplated by section 2315 but, to the contrary, he has directed the state agencies not to grant waivers under any conditions.[6] The present action was brought by the automobile workers union and several individuals to restrain the Sec-

(2) as a result of such action has received any payment under this part to which he was not entitled,

such person shall be liable to repay such amount to the State agency or the Secretary, as the case may be, or either may recover such amount by deductions from any sums payable to such person under this part. Any such finding by a State agency or the Secretary may be made only after an opportunity for a fair hearing. 19 U.S.C. § 2315 (1976).

Although, as indicated above, prior to the passage of the 1981 amendments, the Trade Act itself only provided for recoupment in cases involving fraud, the Secretary issued a regulation, 19 C.F.R. § 91.58(b), which authorized states to impose liability in non-fraud cases on the same basis as similar determinations as to overpayments of unemployment insurance are made under state law. A state agency also had the authority to grant a waiver in accordance with applicable state law. Plaintiffs in this action contend that this regulation was illegal and that any recoupment obtained in non-fraud cases under it should be returned to the claimant. This argument was rejected in *Collins v. Donovan,* 661 F.2d 705 (8th Cir.1981), on the ground that the pre-1981 statute did not deprive the United States of its common law right to recover money wrongfully or erroneously paid. This Court considers that the *Collins* case was correctly decided, and it will follow that decision.

4. The Trade Act now requires eligible workers to exhaust all available unemployment benefits before receiving TRA payments. 19 U.S.C. § 2291(a)(3). In addition, the weekly level of TRA benefits was reduced to the same amount as the worker's unemployment benefits, 19 U.S.C. § 2292(a), and an eligible worker may receive TRA benefits only for the number of weeks which, together with the number of

weeks of unemployment benefits received, equals fifty-two. 19 U.S.C. § 2293.

5. The 1981 amendments made recovery easier by allowing overpayments to be set off not only against future TRA benefits but also against future benefits under other unemployment benefit laws administered by the states or federal government. 19 U.S.C. § 2315(a)(2). The predecessor version of this section permitted offset only against TRA benefits. 19 U.S.C. § 2315 (1976).

6. Telegram from Joseph L. Henneman, Asst. Regional Administrator of the Dept. of Labor for Unemployment Insurance, April 7, 1982.

Plaintiffs also challenge the Secretary's directive to state agencies to require recoupment from claimants who received overpayments before the effective date of the 1981 amendments. Their argument in that respect is not well taken, however, because the language of § 2315(a)(1) and the legislative history indicate that the section applies to overpayments which a recipient "has received" before August 13, 1981—the effective date of the amendment—as well as those occurring after that date. Because Congress' intent seems clear, there is no need to address the issue whether application of the 1981 amendment to overpayments received prior to August 13, 1981 will cause "manifest injustice" under *Bradley v. School Bd. of Richmond,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974). Section 2315(a)(1) applies to all outstanding overpayments of TRA benefits, but, as the Secretary concedes, it does not apply to any case where a determination of waiver was made prior to August 13, 1981 in accordance with applicable state law provisions.

retary from carrying out further recoupments[7] until valid guidelines are issued.

The basic question before the Court is whether the Secretary of Labor, who clearly has the power to issue guidelines which conform to the statutory standard—and presumably some latitude with respect thereto—also has the power to decline to issue any guidelines whatever.[8] In the view of the Court, there can be no doubt that the answer must be in the negative.

Both the language of section 2315 and its legislative history indicate that Congress intended to establish a system under which waiver of recoupment would be available where the payment was made without the fault of the recipient and repayment would violate "equity and good conscience."[9] The Secretary's refusal to issue guidelines thus not only violates the statutory mandate, but it also adversely affects both the state agencies and the individuals who, but for that refusal, would have been eligible for waiver of recoupment. The Secretary's action deprives state agencies of the discretion vested in them by the Congress to determine whether a waiver would be appropriate in an individual case. *Cf. Tongol v. Usery,* 601 F.2d 1091 (9th Cir.1979) (Secretary's regulation barring waiver of re-

coupment overpayments is contrary to congressional intent to allow states to waive recoupment). Additionally, that failure deprives those members of the plaintiff union who would have been able to sustain an "equity and good conscience" claim of the congressionally-mandated opportunity to make such a claim and have it sustained if meritorious.[10]

As indicated in note 8 *supra,* the Secretary appears now to concede that section 2315(a)(1) requires that guidelines providing for waiver be promulgated, and counsel have advised the Court that the Secretary intends to issue proposed guidelines for waiver "within the next few weeks."[11]

This belated promise does not moot the lawsuit.[12] In the first place, the Secretary has only committed himself to issue "proposed" guidelines, no commitment at all having been made as to when final, binding guidelines will actually be issued and when they will take effect. During the interim period, however long it may be, the Secretary's current directive to the states would remain in effect, no waivers could be granted under any conditions, and individuals would continue to have benefits recouped without the opportunity for waiver intend-

7. Except for those involving fraudulent conduct.

8. While the government initially attempted to defend the Secretary's actions—or rather the Secretary's failure to act—subsequent to the hearing on plaintiffs' application for a restraining order at which the Court expressed its view that plaintiffs had made a strong showing on the merits, it was announced by the government that guidelines would be issued in the future. For the reasons developed *infra,* this does not moot the controversy, and the issues must still be decided.

9. See S.Rep. No. 97–139, 97th Cong., 1st Sess. 536 (1981), U.S.Code Cong. & Admin.News 1981, p. 396; S.Rep. No. 97–103, 97th Cong., 1st Sess. 6 (1981); H.R.Rep. No. 97–158, 97th Cong., 1st Sess. 278 (1981); H.R.Rep. No. 97–143, 97th Cong., 1st Sess. 30 (1981).

10. In view of these consequences, and the plain language of the statute, it is difficult to comprehend how the Secretary could have ever believed that his failure to issue guidelines was lawful.

11. Declaration of Robert A. Schaerfl, Director, Office of Personnel Management, Unemployment Insurance Service, United States Department of Labor, December 2, 1982.

12. In addition to a claim of mootness, the Secretary argues that this Court lacks jurisdiction over this action because of 19 U.S.C. § 2311(d), which provides that determinations by state agencies with respect to entitlement to TRA benefits are subject to review only in the "same manner and to the same extent as determinations under the applicable State law." This section, however, does not divest this Court of jurisdiction over this matter. Challenges to determinations under state unemployment insurance law are within the jurisdiction of the federal courts where, as here, the claimant alleges that the determination being challenged was made in violation of federal law. *Christian v. New York State Dept. of Labor,* 414 U.S. 614, 94 S.Ct. 747, 39 L.Ed.2d 38 (1974); *California Dept. of Human Resources Development v. Java,* 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971).

ed by Congress. Additionally, the Secretary has not indicated whether there will be a reprocessing of cases where repayments have been made, nor has he stated that those individuals who had their benefits recouped under § 2315(a)(1) but would satisfy the standards of the new guidelines will have their benefits restored. Thus, since the events subsequent to the filing of the action have not "completely and irrevocably eradicated the effects of the alleged violation"[13] the case is not moot.

The Secretary cannot and will not be permitted to take advantage of his unlawful refusal to issue guidelines by continuing to recoup overpayments without providing for waivers where equitable, as intended by Congress. Accordingly, an order will be issued enjoining the Secretary, and the state agencies acting as his agents under the Trade Act, from recouping overpayments not resulting from fraudulent conduct on the part of the claimant until appropriate guidelines are published in final form.[14] At that time, efforts to recoup overpayments may resume in accordance with valid guidelines. The order also directs the Secretary to reprocess all cases in which repayment has been made under § 2315(a)(1) upon the application of the recipient for a waiver, with repayments being restored to those who qualify for waiver under the guidelines. See *Martinez v. Marshall,* 573 F.2d 555, 557 (9th Cir.1977).

### ORDER

Upon consideration of the cross motions for summary judgment submitted by the parties, and the entire record herein, it is this 17th day of January, 1983,

ORDERED That plaintiffs' motion for summary judgment be and it is hereby granted in part and denied in part, and defendant's motion for summary judgment be and it is hereby granted in part and denied in part, and it is further

ORDERED That defendant Raymond J. Donovan, as Secretary of the United States Department of Labor, his successors, agents, delegates, employees, and assigns, shall

(a) forthwith cease any effort to recoup overpayments under 19 U.S.C. § 2315(a) in cases not involving claimant fraud until such time as guidelines have been issued by the Secretary in conformity with the statute providing for waiver in circumstances in which payment was made without claimant fault and repayment would be contrary to equity and good conscience;

(b) reprocess any cases in which repayments of such overpayments have been made under 19 U.S.C. § 2315(a) following the issuance of guidelines upon application of a claimant, and if a claimant is granted a waiver upon reprocessing the full amount of his repayment shall be restored to him; and

(c) notify and direct all cooperating state agencies acting as his agents in processing TRA applications under the Trade Act of 1974, as amended, 19 U.S.C. § 2101 *et seq.*:

(1) that his previous instruction that no waivers of repayment of overpayments be granted is null and void; and

(2) that any efforts under 19 U.S.C. § 2315(a)(1) to recoup overpayments not involving claimant fraud shall be suspended pending issuance by the Secretary of valid guidelines.

---

13. *County of Los Angeles v. Davis,* 440 U.S. 625, 631, 99 S.Ct. 1379, 1383, 59 L.Ed.2d 642 (1979).

14. As plaintiffs acknowledge, there is no question but that with cases involving fraud, the claimant would not be "without fault" within the meaning of § 2315(a)(1)(A), and, therefore, would not be entitled to a waiver. Thus, these cases have not been included within the prohibition of recoupment pending the issuance of guidelines.