**INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, et al., Plaintiffs,**

v.

**Raymond J. DONOVAN, Secretary of the United States Department of Labor, Defendant.**

**Civ. A. No. 81–1954.**

United States District Court, District of Columbia.

July 28, 1983.

Wendy L. Kahn, A.L. Zwerdling, Zwerdling, Leibig & Kahn, Washington, D.C., John A. Fillion, Leonard Page, Detroit, Mich., Stephen P. Berzon, Trina Grillo, Altshuler & Berzon, San Francisco, Cal., for plaintiffs.

Mark C. Rutzick, William G. Cole, U.S. Dept. of Justice, Civil Div., Washington, D.C., for defendant.

## MEMORANDUM OPINION

JOYCE HENS GREEN, District Judge.

The Trade Act of 1974, 19 U.S.C. § 2101 *et seq.* (Act), authorizes the payment of federally funded benefits, including trade readjustment allowances (TRA), to workers laid off because of a decline in sales or production by their firms because of competition from imports.[1] A worker is eligible to receive TRA benefits if he belongs to a group of workers certified by the Secretary of Labor (Secretary) as eligible to participate in the program and was employed by a

---

1. The assistance program is fully funded by the federal government, but is administered by state unemployment insurance agencies, acting as agents of the United States. *See* 19 U.S.C. § 2311.

single firm for 26 of the 52 weeks immediately preceding the layoff, at wages of at least $30 per week.

Plaintiffs challenge a Department of Labor (DOL) policy which does not permit a week in which an employee draws non-regular wages, such as workers' compensation, disability pay, sickness or accident pay, holiday pay, vacation pay, military pay, back pay or fringe benefits, to be considered a "week of employment" for the purposes of determining whether the 26-week requirement has been met. DOL Manpower Administration Handbook No. 315, Ch. 1, ¶ 9 (July 1975) (Handbook Policy). Plaintiffs contend that this policy violates Section 231 of the Act, 19 U.S.C. § 2291, and, insofar as it affects military leave, violates the Vietnam Era Veterans' Readjustment Assistance Acts of 1972 and 1974, 38 U.S.C. §§ 2013 and 2021 et seq. (Veterans' Acts).

The complaint alleges that some of the individual plaintiffs were determined ineligible for TRA benefits by the state agencies to which they had applied, as a result of the Handbook Policy. From subsequent pleadings, however, it appears that all but four of the eleven individual plaintiffs were ultimately determined eligible, despite the Handbook Policy.[2] The complaint further alleges that thousands of other members of plaintiff, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW), have been denied benefits by state agencies, acting as agents of DOL, because weeks in which they received workers' compensation, sickness or accident pay, disability pay, holiday pay, vacation pay, military pay, back pay or fringe benefits were wrongfully excluded, in accordance with the Handbook Policy, as weeks of employment in determining TRA eligibility.

Seeking to promote a uniform interpretation of the Act pursuant to 29 C.F.R. § 91.54, DOL has sternly advised that it will invoke the so-called "Lopez rule" whenever a state appeals body rules contrary to DOL's prohibition of the use of various types of compensated leave as qualifying weeks of employment. See Exhs. B, C, I and J in support of plaintiffs' motion for summary judgment, and letter dated March 24, 1983 from Stephen P. Berzon. Under the Lopez rule, a state must reimburse the federal government from its own funds for TRA benefits awarded in defiance of DOL policy.

In 1981, Congress amended the Trade Act provision governing TRA eligibility. Weeks of compensated leave, including inactive duty or active duty military service, are not expressly treated as qualifying weeks of employment for TRA benefits up to certain limits.[3] However, plaintiffs seek

---

**2.** At this time only plaintiffs LaMarra, Sims, Browning and Calehuff have been denied benefits. Although plaintiffs de la Cruz, Diga and Peterson were determined eligible by the California Unemployment Insurance Appeals Board, the California Employment Development Department filed a petition for a writ of mandate to review that favorable determination. Proceedings in that state court action, to which none of the plaintiffs here are parties, have been held in abeyance pending this Court's decision in the instant case. Similarly, with respect to plaintiff Mitchell, the Michigan Employment Security Commission petitioned the Wayne County Circuit Court for a writ of mandate setting aside the favorable decision of the Michigan Employment Security Board.

**3.** The 1981 amendments are contained in § 2503 of the Omnibus Budget Reconciliation Act of 1981. Pub.L. 97–35, 95 Stat. 881. Specifically, 19 U.S.C. § 2291(a)(2) now provides that the

"[applying] worker had, in the 52-week period ending with the week in which such total or partial separation occurred, at least 26 weeks of employment at wages of $30 or more a week in adversely affected employment with a single firm or subdivision of a firm, or, if data with respect to weeks of employment with a firm are not available, equivalent amounts of employment computed under regulations prescribed by the Secretary. For the purposes of this paragraph, any week in which such worker—

(A) is on employer-authorized leave for purposes of vacation, sickness, injury, maternity, or inactive duty or active duty military service for training,

(B) does not work because of a disability that is compensated under a workmen's compensation law or plan of a State or the United States, or

(C) had his employment interrupted in order to serve as a full-time representative of a labor organization in such firm or subdivision,

relief for weeks of employment which began prior to October 1, 1981. Section 2514(b) of the Act exempts adversely affected workers receiving or entitled to receive allowances prior to October 1, 1981 from the limitations on TRA eligibility imposed by the amendments. The sole issue here is the legality of the Handbook Policy as it restricted the eligibility of UAW members for TRA benefits under the Trade Act before the 1981 amendments.

Plaintiffs have moved for summary judgment on the basis that the language of the Trade Act, its legislative history, and DOL regulations, require that weeks of non-regular wages be considered "weeks of employment" in this context, and that the Veterans' Acts prohibit penalizing veterans for periods of military leave in determining TRA eligibility. Defendant has moved to dismiss plaintiffs' claims on the basis that jurisdiction over this case is vested exclusively in state courts by 19 U.S.C. § 2311(d).

### I. Subject Matter Jurisdiction

"Determinations" by state agencies with respect to entitlement to TRA benefits are subject to review "in the same manner and to the same extent as determinations under the applicable State law." 19 U.S.C. § 2311(d). The phrase "applicable State law" refers to "the unemployment insurance law of the state approved by the Secretary of Labor under Section 3304 of Title 26." 19 U.S.C. § 2319(10). The Secretary contends that § 2311(d) divests the Court of jurisdiction over this action.[4]

As the Secretary acknowledges, the language of 19 U.S.C. § 2311(d) is virtually identical to that in 5 U.S.C. § 8502(d) regarding state unemployment compensation payments to federal employees.[5] Yet, where a claimant alleges that the state unemployment agency's determination was made in violation of federal law, 5 U.S.C. § 8502(d) has not precluded federal jurisdiction. *See Christian v. New York State Department of Labor,* 414 U.S. 614, 615–16, 94 S.Ct. 747, 748, 39 L.Ed.2d 38 (1974). *Cf. AFL–CIO v. Marshall,* 494 F.Supp. 971 (D.D.C.1980) (regulation promulgated under Federal-State Extended Unemployment Compensation Act, 26 U.S.C. § 3304n, challenged as inconsistent with that Act).

■ Similarly, individuals who have been denied Social Security benefits under state unemployment compensation laws may challenge those laws in federal court as inconsistent with the Social Security Act. *Ohio Bureau of Employment Services v. Hodory,* 431 U.S. 471, 97 S.Ct. 1898, 52 L.Ed.2d 513 (1977); *California Department of Human Resources v. Java,* 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971).

■ In the typical case the Act envisions that a disappointed applicant for TRA benefits appeals to the state court the administering agency's application of the pertinent guidelines or regulations to the facts of his case. The instant case, however, is atypical. Here, plaintiffs allege that the guidelines themselves are invalid; they do not contest the particulars of the application of the guidelines to the facts of individual cases. In such circumstances, section 2311(d) of

---

shall be treated as a week of employment at wages of $30 or more, but not more than the following number of weeks may be treated as such weeks of employment under this sentence:

(i) 3 weeks if no weeks described in subparagraph (B) occurred during the 52-week period concerned.

(ii) 7 weeks if all are weeks described in subparagraph (B).

(iii) 7 weeks in the case of weeks described in subparagraphs (B) and (A) or (C), or both, except that not more than 3 of such weeks may be other than weeks described in subparagraph (B)."

4. Plaintiffs assert jurisdiction under 28 U.S.C. § 1331, 28 U.S.C. § 1337 and 28 U.S.C. § 1361. Because it is determined that plaintiffs' claims fall within this Court's general federal question jurisdiction, the propriety of invoking jurisdiction under these additional statutes need not be addressed.

5. 5 U.S.C. § 8502(d) provides:
"A determination by a State agency with respect to entitlement to compensation under an agreement is subject to review in the same manner and to the same extent as determinations under the State unemployment compensation law and only in that manner and to that extent."

the Act does not divest this Court of jurisdiction.[6] Other federal courts have entertained similar Trade Act cases without regard to section 2311(d). *See Collins v. Marshall,* 507 F.Supp. 83 (N.D.Mo.1981), *rev'd sub nom. on other grounds, Collins v. Donovan,* 661 F.2d 705 (8th Cir.1981); *U.A.W. v. Donovan,* 554 F.Supp. 1172 (D.D.C.1983); *U.A.W. v. Donovan,* No. 82–1458, slip op. (D.D.C. June 10, 1983).

 Two individual plaintiffs, and the UAW on behalf of other UAW members similarly situated, assert federal statutory rights arising out of their status as veterans.[7] Claims under the Veterans' Acts may be brought in federal court without first exhausting any available non-federal remedies. *McKinney v. Missouri-K.-T. Ry. Co.,* 357 U.S. 265, 268–69, 78 S.Ct. 1222, 1224–25, 2 L.Ed.2d 1305 (1958). *See also Coffy v. Republic Steel Corp.,* 447 U.S. 191, 194, 100 S.Ct. 2100, 2103, 65 L.Ed.2d 53 (1980). Whatever their ultimate merit, plaintiffs' Veterans' Acts claims are substantial and provide a separate basis for federal jurisdiction sufficient to withstand a motion to dismiss. *See Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666–67, 94 S.Ct. 772, 776–77, 39 L.Ed.2d 73 (1974).

Several of the non-veteran plaintiffs were successful at the state administrative level. Ordinarily, these persons would lack standing to sue because they have not suffered actual or threatened injury as a result of the defendant's allegedly unlawful conduct. *Valley Forge Christian College v.*

*Americans United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982). In this instance, however, defendant has jeopardized the likelihood that they will ever receive any payments. In light of defendant's threats to impose the Lopez rule against states which award TRA benefits despite the Handbook Policy, and to decertify state unemployment insurance programs, a state court suit to enforce an administrative determination would be a fruitless gesture.[8] As noted above, the California court is awaiting a decision from this Court on the precise eligibility issue.

If the Michigan and Delaware agencies had agreed with the California Appeals Board and ruled contrary to DOL's interpretation, the more appropriate way to review the Handbook Policy might have been through federal court actions by the state agencies to challenge the imposition of the Lopez rule or the initiation of decertification proceedings, if DOL executed its threats. *See Cabais v. Egger,* 690 F.2d 234, 240 (D.C.Cir.1983). But the Handbook Policy has had a sufficiently direct negative impact on many plaintiffs to warrant judicial review at this time and in this manner.[9] A decision by this Court invalidating the Handbook Policy and directing the Secretary to so inform cooperating state agencies, would secure the precarious relief that some of the plaintiffs have already been granted.[10] The question, then, of the suc-

---

**6.** Defendant points to several state court decisions that resolve the same matters plaintiffs raise in this litigation. While plaintiffs might have instituted this action in an appropriate state court, this option did not deprive them of the right to a federal forum for their federal claims. *Wilcox v. Consolidated Gas Co.,* 212 U.S. 19, 40, 29 S.Ct. 192, 195, 53 L.Ed. 382 (1909).

**7.** Verified Complaint ¶ 68. One of the individual veteran plaintiffs, Jack D. Diga, Jr., has been determined eligible for TRA benefits since the filing of this action, by the California Unemployment Insurance Appeals Board.

**8.** *See* Exhs. B, C, I and J in support of plaintiffs' motion for summary judgment, and letter dated Mar. 24, 1983, from Stephen P. Berzon. *See also* n. 2, *supra.*

For the same reasons, further exhaustion of administrative remedies for any plaintiffs who have not completed the administrative process would be futile. *See Gibson v. Berryhill,* 411 U.S. 564, 575 n. 14, 93 S.Ct. 1689, 1696 n. 14, 36 L.Ed.2d 488 (1973).

**9.** *See* Verified Complaint at ¶¶ 47, 51.

**10.** Citing those decisions contrary to DOL policy as examples, defendant asserts that the Secretary's guidelines are not binding on state agencies. Despite those examples, however, the severity of the consequences of non-compliance strongly suggest that more timorous state agencies may comply involuntarily.

cessful plaintiffs' standing is predominantly academic.

Accordingly, defendant's motion to dismiss for lack of subject matter jurisdiction is denied.

## II. Trade Act of 1974

The parties agree that the Trade Act issue before the Court is what Congress intended in 1974 by conditioning TRA benefits on "at least 26 weeks of employment at wages of $30 or more a week" during the preceding year. 19 U.S.C. § 2291(2). DOL claims that Congress meant 26 actual weeks of work. Plaintiffs claim that Congress meant for these weeks to include weeks of compensated leave, such as sick leave, vacation or military service leave.

The starting point in construing any statutory provision is the language itself. *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982). The Court may assume "that the legislative purpose is expressed by the ordinary meaning of the words used." *Id.* (*quoting Richards v. United States,* 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962). The Act does not define "employment" or "wages". However, the Secretary promulgated implementing regulations for the Trade Expansion Act of 1962 [11] (Trade Expansion Act), the predecessor to the 1974 Act, which define those terms as follows:

(15) "Employment" means any service performed for an employer by an individual for wages or by an officer of a corporation.

(35) "Wages" means all compensation for employment for an employer including commissions, bonuses, and the cash value

of all compensation in a medium other than cash.

29 C.F.R. § 91.3(a). These regulations, still in effect, preceded the Handbook Policy by approximately 13 years.

Plaintiffs' employers consider those workers on various types of leave, including disability, sick, holiday or vacation leave, to be "employees" of their firms. While on leave those workers continue to accumulate seniority, pension and supplemental unemployment benefits, and their employers continue to make health, life and other insurance payments in excess of the $30 per week statutory requirement. Declaration of Jacob C. Hurwitz (Pl's Exh. D).[12] Therefore, in light of the common understanding of the terms "wages" and "employment", reinforced by DOL regulations, those same workers logically should be able to count certain weeks of leave as "weeks of employment" for purposes of determining entitlement to TRA benefits. *See Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980).

Although the Handbook Policy expressly prohibits this construction of the Act, whether labeled a "general policy statement" or an "interpretive rule," [13] it need not be accorded any special deference if it indeed contravenes the intent of Congress. *See Morton v. Ruiz,* 415 U.S. 199, 237, 94 S.Ct. 1055, 1075, 39 L.Ed.2d 270 (1974).[14] The Court is obliged to "honor the clear meaning of [the] statute, as revealed by its language, purpose and history." *Southeastern Community College v. Davis,* 442 U.S. 397, 411, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979) (*quoting Teamsters v. Daniel,* 439

---

**11.** Pub.L. No. 87–794, 76 Stat. 872.

**12.** While workers on military leave accrue full seniority they are not considered active employees, eligible for fringe benefits, such as health and life insurance. Declaration of Jacob C. Hurwitz (Pl's Exh. D). *See also* Attachment A to Pl's Exh. D at 85–86. Accordingly, workers on military leave, who receive compensation only from the government and not from their employers, present questions about the interplay between the TRA eligibility criteria of the 1974 Trade Act and the reemployment pro-

visions of the Veterans' Acts. *See infra,* at 1056–1057.

**13.** *See generally Batterton v. Marshall,* 648 F.2d 694 (D.C.Cir.1980).

**14.** As previously stated, the Handbook Policy was not a "contemporaneous construction" of the TRA eligibility requirements. *See, e.g., Andrus v. Shell Oil Co.,* 446 U.S. 657, 667–68, 100 S.Ct. 1932, 1938–39, 64 L.Ed.2d 593 (1980).

U.S. 551, 566 n. 20, 99 S.Ct. 790, 800 n. 20, 58 L.Ed.2d 808 (1979)).

Under the Trade Expansion Act no worker was found eligible for TRA benefits for the first seven years.[15] To correct the failings of the earlier program,[16] the 1974 Congress provided "a new adjustment assistance program with eased qualifying criteria." S.Rep. No. 1298, 93d Cong., 2d Sess. 131 (1974), *reprinted in* [1974] U.S.Code Cong. & Ad.News 7186, 7273 [hereinafter Senate Report]; *see also* 119 Cong.Rec. 40793 (1973) (statement of Rep. Drinan). Congress realized that workers displaced because of competition from imports deserve substantial compensation for their unequal share of the economic burden of a liberal international trade policy. *See U.A.W. v. Marshall,* 584 F.2d 390, 395 (D.C. Cir.1978); 119 Cong.Rec. 40568 (1973) (statement of Rep. Reuss); 120 Cong.Rec. 39854 (1974) (statement of Sen. Nelson). Those workers, more so than other unemployed persons, would experience considerable difficulty in securing similar employment elsewhere in adversely affected industries. Such workers, the legislators directed, should "receive all the benefits to which they are entitled in an expeditious manner."

Senate Report at 131, U.S.Code Cong. & Admin.News, p. 7273.

The broad remedial purpose of the Act is furthered by a liberal construction of the 26-week TRA eligibility requirement. *See generally Peyton v. Rowe,* 391 U.S. 54, 65, 88 S.Ct. 1549, 1555, 20 L.Ed.2d 426 (1968); *Tcherepnin v. Knight,* 389 U.S. 332, 336, 88 S.Ct. 548, 553, 19 L.Ed.2d 564 (1967); *Securities and Exchange Comm'n v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 353, 64 S.Ct. 120, 124, 88 L.Ed. 88 (1943) (remedial statutes should be liberally construed). DOL's interpretation of the terms "wages" and "employment" mercilessly defeats that purpose [17] and achieves some anomalous results.[18] Although Congress offered no gloss on the meaning of those terms, it unmistakably expressed a "mood" of largesse which the Secretary is not free to ignore.[19]

The legislative histories of the Trade Expansion Act and the 1974 Act indicate that the 26-week requirement was designed to limit eligibility for benefits to those workers genuinely attached to affected firms. Congress did not specify that workers could fulfill that requirement only by actual performance of services. *See* S.Rep. No. 2059,

---

**15.** Workers were eligible for TRA benefits under section 322 of the Trade Expansion Act if they had:

"(1) In the 156 weeks immediately preceding such total or partial separation, at least 78 weeks of employment at wages of $15 or more a week, and

(2) In the 52 weeks immediately preceding such total or partial separation, at least 26 weeks of employment at wages of $15 or more a week in a firm or firms with respect to which a determination of unemployment or underemployment under section 302 has been made."

**16.** The legislative history of the 1974 Act reflects Congress' unqualified discontent with the 1962 Act. For example, the House Report described the earlier program as "inadequate and disappointing". H.R.Rep. No. 571, 93d Cong., 1st Sess. 52 (1973). On the floor, Congressman Harrington remarked that the "woefully inadequate" 1962 Act "offers too little assistance, too low benefits, and is so difficult to invoke that it is finally an administrative nightmare." 119 Cong.Rec. 40791 (1973). *See also* 119 Cong.Rec. 40789 (1973) (statement of Rep. Robison) ("In the past, applicants for such relief have found Federal programs inaccessible,

cumbersome, and inadequate."); 120 Cong. Rec. 39852 (1974) (statement of Sen. Humphrey).

**17.** DOL regulations defining those terms, 29 C.F.R. §§ 91.3(a), 91.7(e), *see supra,* at 1052, conflict with the Handbook Policy, but conform to the legislative policy. *Cf.* 29 C.F.R. §§ 91.-3(a)(6), 91.3(a)(9) (specifically excluding weeks of sick or vacation leave in computing average weekly hours and wages).

**18.** *See, e.g., infra,* at 1054.

**19.** *See U.A.W. v. Marshall,* 584 F.2d 390, 395–96 (D.C.Cir.1978):

"A primary purpose of the Trade Act of 1974 was to make worker adjustment assistance more readily available than it had been under the Trade Expansion Act of 1962. . . .

The absence of specific legislative history on the meaning of 'an appropriate subdivision' [another of the Act's worker adjustment assistance provisions], does not mean the Secretary's interpretation of that phrase is to be shaped without reference to the general remedial purpose of the worker adjustment assistance provisions."

87th Cong., 2d Sess. 12 (1962), *reprinted in* [1962] U.S.Code Cong. & Ad.News 3110, 3121:

> Adversely affected workers would be eligible to receive adjustment assistance in the form of weekly allowances, retraining, and in certain cases, relocation allowances. Allowances will be payable only to workers who have been employed substantially over the previous 3 years, who have been attached for at least 6 months in the last year to a firm or firms, or subdivisions thereof, found to be affected by imports, and who have become unemployed because of lack of work due in major part to the effect of increased imports on such a firm after the enactment of this bill;

and, S.Rep. No. 1298, 93d Cong., 2d Sess. 135 (1974), *reprinted in* [1974] U.S.Code Cong. & Ad.News 7277:

> The Committee has changed the qualifying requirements which individual workers must meet in order to receive benefits.
>
> Under the bill a worker must have been employed with the same trade impacted firm or subdivision for 26 out of the 52 weeks preceding his separation at wages of at least $30 a week. These qualifications differ from those in present law in that: (1) they omit the requirement of total employment during 78 of 156 weeks immediately preceding total or partial separation, (2) they increase the required wages for a qualifying week of employment from $15 to $30, and (3) they add a new requirement that the qualifying weeks be with a single firm or subdivision of a firm.

The 1974 Act substitutes a 26-week attachment to a particular employer for the longer attachment to the work force as a whole that the Trade Expansion Act required. Under both statutes, workers are ineligible for TRA benefits if their employment at the time of a layoff due to import competition is merely fortuitous. Correspondingly,

genuinely "attached" employees who happen to be on vacation, sick leave, or workers' compensation for a portion of the 52-week period immediately preceding a layoff are not among those whom Congress intended to exclude. Rather, those persons are often the long-term employees Congress most wanted to assist, considering that employees with greater seniority tend to accumulate longer vacation periods. "Statutes should be interpreted to avoid . . . unreasonable results whenever possible." *American Tobacco Co. v. Patterson,* 456 U.S. at 71, 102 S.Ct. at 1538.

Defendant maintains that the 1974 Act cannot be interpreted to permit workers on compensated leave during the statutory period to qualify for TRA benefits because (1) the 1981 amendments to the Act liberalized, rather than restricted, the eligibility criteria, and (2) Congress ratified the restrictive DOL interpretation of the Trade Expansion Act when it reenacted the 26-week requirement in 1974. Neither of these arguments is persuasive.

While it appears that Congress in 1981 may have viewed the 1981 amendments as liberalizing the current law [20] "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1959). The intent of the enacting Congress controls. *Securities and Exchange Commission v. Capital Gains Research Bureau,* 375 U.S. 180, 199–200, 84 S.Ct. 275, 286–287, 11 L.Ed.2d 237 (1963); *Oscar Mayer v. Evans,* 441 U.S. 750, 758, 99 S.Ct. 2066, 2072, 60 L.Ed.2d 609 (1979). Defendant agrees that the relevant inquiry here is whether the Secretary's interpretation of the Act before the 1981 amendments was correct. If subsequent legislatures could continually reinterpret earlier statutes "the meaning of a statute might never be settled, even though the statutory language had never been changed or reenacted with a different intent." *National Citizens Committee for*

---

20. *See* Omnibus Budget Reconciliation Act of 1981, H.R.Conf.Rep. 208 to accompany H.R. 3982, 97th Cong., 2d Sess. 1001–1002 (1981), *reprinted in* [1981] U.S.Code Cong. & Ad.News 396, 1364–65.

*Broadcasting v. FCC,* 555 F.2d 938, 952 n. 41 (D.C.Cir.1977) *rev'd in part and aff'd in part,* 436 U.S. 775, 98 S.Ct. 2096, 56 L.Ed.2d 697 (1978).

Arguments predicated upon subsequent legislation should not be summarily rejected, but "they must be weighed with extreme care." *Andrus v. Shell Oil Co.,* 446 U.S. 657, 666 n. 8, 100 S.Ct. 1932, 1938 n. 8, 64 L.Ed.2d 593 (1980). The legislative history of the 1974 Act unmistakably manifests the compensatory purpose behind the worker assistance provisions. Where the intent of the enacting Congress seems clear *post hoc* legislative observations are of little value. *See Oscar Mayer v. Evans,* 441 U.S. at 758, 99 S.Ct. at 2072.

Defendant also argues that prior to 1974 DOL had interpreted the phrase "weeks of employment" under the Trade Expansion Act to exclude weeks of compensated leave. Since Congress failed to alter this phrase in the 1974 Act, it implicitly ratified DOL's interpretation. This argument has merit only if the legislative history reflects an explicit congressional awareness of the administrative interpretation at issue. *Securities and Exchange Commission v. Sloan,* 436 U.S. 103, 119–121, 98 S.Ct. 1702, 1712–1713, 56 L.Ed.2d 148 (1978); *Morton v. Ruiz,* 415 U.S. 199, 230, 94 S.Ct. 1055, 1072, 39 L.Ed.2d 270 (1974). A mere recitation of understanding, or even approval, of an agency's practice may not necessarily indicate legislative ratification. 436 U.S. at 119–20, 98 S.Ct. at 1712. Indeed, "to bring this 'doctrine of reenactment' into play, Congress must not only have been aware of

the administrative interpretation but must also have given some "affirmative indication' of such intent." *Association of American Railroads v. ICC,* 564 F.2d 486, 493 (D.C.Cir.1977).[21]

In the present case, the legislative history of the 1974 Act evidences no congressional awareness whatsoever of the DOL Handbook Policy.[22] In fact, its unambiguous expression of dissatisfaction with DOL's administration of the Trade Expansion Act attenuates the possibility that Congress implicitly ratified DOL's restrictive interpretation of the 26-week requirement.

The conclusion that the phrase "weeks of employment at wages" in the 1974 Act includes weeks of compensated leave is further supported by a 1946 Supreme Court decision interpreting substantially similar language regarding eligibility for old age benefits under the Social Security Act. *Social Security Board v. Nierotko,* 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718 (1946). In *Nierotko,* the question was whether back pay should be treated as "wages" under the Social Security Act, and if so, whether the term "employment" included periods for which back pay was awarded or only periods of "productive activity". The Social Security Act defined wages as "remuneration for employment" and employment as "any service . . . performed by an employee for his employer.[23] 327 U.S. at 364, 66 S.Ct. at 641. After determining that back pay constituted "remuneration for employment", the Court, rejecting the contrary interpretation of the Social Security Board,

**21.** Defendant relies upon *N.L.R.B. v. Bell Aerospace Co. Division of Textron, Inc.,* 416 U.S. 267, 94 S.Ct. 1757, 40 L.Ed.2d 134 (1974); *Costanzo v. Tillinghast,* 287 U.S. 341, 53 S.Ct. 152, 77 L.Ed.2d 350 (1932); and *Kay v. F.C.C.,* 443 F.2d 638 (D.C.Cir.1970). All these cases, however, held that administrative interpretations of statutory provisions had been ratified by subsequent reenactment because Congress was clearly aware of and specifically considered those interpretations.

**22.** As indication of congressional awareness, defendant relies upon an unpublished 1965 DOL handbook which describes how employers should complete forms for TRA benefits for

their employees, three unpublished DOL decisions declaring that non-work periods would not count toward TRA eligibility, and an unpublished unemployment insurance program letter declaring that weeks of military wages would not count toward TRA eligibility. Exhs. E, F, G, H, in support of defendant's motion to dismiss and opposition to plaintiffs' motion for summary judgment. The likelihood that Congress considered these documents and failed to mention them is highly remote.

**23.** These definitions are virtually identical to the definitions of those same terms in DOL regulations pertaining to the Trade Act. *See infra,* at 1052.

held that " 'service' as used by Congress in that definitive phrase means not only work actually done but the entire employer-employee relationship for which compensation is paid to the employee by the employer." 327 U.S. at 365–66, 66 S.Ct. at 641.

This Court sees no reason, and defendant has proposed none, why "employment" should be construed more narrowly for purposes of determining eligibility for benefits under the Trade Act than under the Social Security Act.

### III. *Veterans' Acts of 1972 and 1974*

Plaintiffs recognized at oral argument that because workers on military leave are not paid wages by their employers, their eligibility for TRA benefits depends on a reading of the 1974 Trade Act in conjunction with the Veterans' Acts. They maintain that the Veterans' Reemployment Rights Act, 38 U.S.C. § 2021 *et seq.*, a part of the Vietnam Era Veterans' Readjustment Assistance Act of 1974, requires weeks of military leave to be counted toward the 26-week eligibility requirement. In the alternative, plaintiffs argue that 38 U.S.C. § 2013, a section of the Vietnam Era Veterans' Assistance Act of 1972, requires those weeks to be disregarded entirely and pre-service and post-service periods of employment to be added together, in order to meet the 26-week requirement.[24]

### A. *Veterans' Reemployment Rights Act*

### (1974 Veterans' Act)

Section 2021 of the 1974 Veterans' Act grants any person inducted into the armed forces the right to be reinstated by his pre-service employer, if still qualified, to his former position "or to a position of like seniority, status, and pay . . . . " 38 U.S.C. § 2021(a)(B)(i). Section 2024 grants identi-

cal rights to voluntary enlistees and members of the reserves. These reemployment provisions guarantee job security for returning veterans, and were designed to eliminate any disadvantage in employment for having served in the armed forces. 38 U.S.C. § 2021(b)(1).[25] *Alabama Power Co. v. Davis,* 431 U.S. 581, 583, 97 S.Ct. 2002, 2004, 52 L.Ed.2d 595 (1976); *Schaller v. Board of Ed. of Elmwood Local School Dist.,* 449 F.Supp. 30, 32 (1978).

Plaintiffs Diga and Sims, and other members of plaintiff UAW who took military leave, were restored to their pre-service employment as the law prescribes. When they were subsequently laid off, however, they were declared ineligible for TRA benefits as a consequence of their periods of military service. Plaintiffs argue that weeks of military leave must be treated as weeks of employment for TRA eligibility purposes, and employers must absorb the costs, based upon Section 2021(b)(2) of the 1974 Veterans' Act, which provides:

> It is hereby declared to be the sense of the Congress that any person who is restored to or employed in a position in accordance with the provisions of clause (A) or (B) of subsection (a) of this section should be so restored or reemployed in such manner as to give such person such status in the person's employment as the person would have enjoyed if such person had continued in such employment continuously from the time of such person's entering the Armed Forces until the time of such person's restoration to such employment, or reemployment.[26]

Although the reemployment provisions are to be liberally construed in favor of returning veterans, *Coffy v. Republic*

---

**24.** The Court acknowledges, with approval, the sound decision in *Hulet v. Review Bd. of Ind. Employment Security Div.,* 412 N.E.2d 289 (Ind.1980), which addressed these same contentions.

**25.** Before their recodification in 1974, the Veterans' reemployment rights provisions were codified at 50 U.S.C.App. § 459 (1970 ed.) (§ 9 of the Military Selective Service Act of 1967).

**26.** In this section, Congress codified the principle of *Fishgold v. Sullivan Drydock & Repair Corp.,* 328 U.S. 275, 284–85, 66 S.Ct. 1105, 1110–11, 90 L.Ed. 1230 (1946): The veteran "does not step back on the seniority escalator at the point he stepped off. He steps back on at the precise point he would have occupied had he kept his position continuously during the war." *See Coffy v. Republic Steel Corp.,* 447 U.S. 191, 196, 100 S.Ct. 2100, 2104, 65 L.Ed.2d 53 (1980).

*Steel Corp.,* 447 U.S. 191, 196, 100 S.Ct. 2100, 2104, 65 L.Ed.2d 53 (1980), the Court cannot apply them outside of Congress' framework. The 1974 Veterans' Act obligates employers to treat reemployed veterans as if they had been employed continuously while on military leave, and thereby insures that they are not deprived of any perquisites of seniority because of their absence. *Id.* at 196–197, 100 S.Ct. at 2104–2105. Yet, the statute only addresses the rights of returning veterans to benefits offered by their employers.[27] It simply does not address the rights of returning veterans "with regard to eligibility for federal unemployment assistance or job training programs." *Hulet v. Review Bd. of Ind. Employment Security Div.,* 412 N.E.2d 289, 292 (Ind.1980). The protective purpose of the reemployment provisions of the 1974 Veterans' Act, while consistent with the compensatory objective of the worker assistance provisions of the Trade Act, does not establish that weeks of military leave constitute "weeks of employment" toward eligibility for TRA benefits. Those benefits are funded by the government and not by plaintiffs' employers.

### B. *Section 2013 of the Veterans' Readjustment Assistance Act of 1972* (1972 Veterans' Act)

■ Section 2013 of the 1972 Veterans' Act provides:

> Any (1) amounts received as pay or allowances by any person while serving on active duty, (2) period of time during which such person served on such active duty ... shall be disregarded in determining the needs or qualifications of participants in any public service employment program, any emergency employment program, any job training program assisted under the Economic Opportunity Act of 1964, any employment or training program assisted under the Comprehensive Employment and Training Act, *or any employment or training (or related)*

> *program financed in whole or in part with Federal funds.*

38 U.S.C. § 2013 (emphasis added). The Court agrees with plaintiffs that the Trade Act is at least a "related" job training program. Consequently, the law requires that periods of military service must be disregarded in determining eligibility for TRA benefits. As such, plaintiffs who are returning veterans are entitled to add together their pre-service and post-service periods of employment in order to satisfy the 26-week requirement. Defendant's protests that the Trade Act is not a job training program ignore section 2296(a) of the Trade Act which authorizes the Secretary to "approve" job training programs; section 2292(b), which provides that TRA benefits are "in lieu of any training allowance to which the worker would be entitled under ... other Federal law;" section 2295, which provides for counseling, testing, placement and other employment services; section 2293, which provides for a 26-week extension of benefits while receiving training; section 2297, which provides for job search allowances; and section 2298, which provides for relocation allowances. *See Hulet v. Review Bd. of Ind. Employment Security Div.,* 412 N.E.2d at 292–93; *see also* Exh. F in support of plaintiffs' motion for summary judgment (Opinion issued by DOL Solicitor's office concurring in this result).

The Court fully appreciates the administrative costs and inconvenience imposed by this ruling. However, it requires nothing more than what Congress intended. In view of the foregoing and upon consideration of the arguments of the parties and the entire record herein, it is, by the Court, this 28th day of July, 1983 hereby ·

ORDERED, that:

1. Defendant's motion to dismiss is denied;

2. Plaintiffs' motion for summary judgment is granted, there being no genuine issue as to any material fact;

---

27. *See e.g., Coffy v. Republic Steel Corp.,* 447 U.S. 191, 100 S.Ct. 2100, 65 L.Ed.2d 53 (1980) (supplemental unemployment benefits payable under collective bargaining agreement); *Beckley v. Lipe-Rollway Corp.,* 448 F.Supp. 563 (N.D.N.Y.1977) (pension benefits).

3. The DOL Manpower Administration Handbook On Adjustment Assistance For Workers Under the Trade Act Of 1974 (Handbook No. 315), Part C, p. C–I–4, ¶ 9 (1975), violates § 231(2) of Title II of the Trade Act of 1974, 19 U.S.C. § 2291(2); and the Vietnam Era Veterans' Readjustment Assistance Act of 1972, 38 U.S.C. § 2013;

4. A week in which a worker received payment of workers' compensation, disability pay, sickness or accident pay, holiday pay, vacation pay, back pay or fringe benefits of at least $30 is a week of employment for the purpose of determining a worker's eligibility for TRA benefits under § 231(2) of Title II of the Trade Act of 1974, 19 U.S.C. § 2291(2) prior to October 1, 1981;

5. A week in which a worker received military pay must be disregarded for the purpose of determining a worker's eligibility for TRA benefits under § 231(2) of Title II of the Trade Act of 1974, 19 U.S.C. § 2291(2) prior to October 1, 1981.

6. Defendant Raymond J. Donovan, as Secretary of the United States Department of Labor, his successors, agents, delegates, employees, and assigns, shall:

(a) Notify all cooperating state agencies acting as agents in processing TRA applications that a week in which a worker received payment of workers' compensation, disability pay, sickness or accident pay, holiday pay, vacation pay, back pay or fringe benefits of at least $30 is a week of employment, and a week in which a worker received military pay must be disregarded, for the purpose of determining a worker's eligibility for TRA benefits under § 231(2) of Title II of the Trade Act of 1974, 19 U.S.C. § 2291(2) prior to October 1, 1981.

(b) Direct all cooperating state agencies to: (1) review all cases in which TRA benefits were denied under § 231(2) of Title II of the Trade Act of 1974, 19 U.S.C. § 2291(2) prior to October 1, 1981, in order to identify those cases in which benefits were denied because of failure to consider a week of workers' compensation, disability pay, sickness or accident pay, holiday pay, vacation pay, back pay or fringe benefits as a week of employment, or to disregard a week in which a worker received military pay, in determining TRA eligibility (2) notify claimants in such cases that they may be entitled to benefits, and (3) reprocess such cases.

### JUDGMENT

In accordance with the Memorandum Opinion issued this date it is, by the Court, hereby

ORDERED that judgment be entered in favor of plaintiffs International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Brenda L. Baxter, Bill Browning, Robert Calehuff, Francisco de la Cruz, Jack D. Diga, Jr., Samuel Ealy, Meredith Graham, Ludovico LaMarra, Patrick Daniel Mitchell, Sharon Peterson, and Bernard Sims, and against defendant, Raymond J. Donovan, Secretary of the United States Department of Labor.