816 F.2d 761
 8 ITRD 2169, 259 U.S.App.D.C. 457, 55
USLW 2610,
106 Lab.Cas. P 12,400
 INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, et al.
v.
William BROCK, Secretary of the United States Department of
Labor, Appellant.
 No. 83-2026.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Feb. 6, 1987.
Decided April 24, 1987.
 
 Appeal from the United States District Court for the District of Columbia (Civil Action No. 81-01954).
 William G. Cole, Atty., Dept. of Justice, with whom Richard K. Willard, Asst. Atty. Gen., Dept. of Justice, Joseph E. diGenova, U.S. Atty., and Leonard Schaitman, Atty., Dept. of Justice, Washington, D.C., were on the brief, for appellant. Michael F. Hertz, Atty., Dept. of Justice, Washington, D.C., also entered an appearance for appellant.
 Marsha S. Berzon, San Francisco, Cal., with whom Jordan Rossen, Leonard Page, Detroit, Mich., Stephen P. Berzon, George Harris and Gay C. Danforth, San Francisco, Cal., were on the brief, for appellees. Michael Rubin, San Francisco, Cal., Wendy Kahn and Abraham L. Zwerdling, Washington, D.C., also entered appearances for appellees.
 Before MIKVA and EDWARDS, Circuit Judges, and WRIGHT, Senior Circuit Judge.
 Opinion for the court filed by Circuit Judge HARRY T. EDWARDS.
 HARRY T. EDWARDS, Circuit Judge:
 
 
 1
 In 1981, the International Union, United Automobile, Aerospace & Agricultural Implement Workers of America ("UAW") and eleven named plaintiffs filed suit in the District Court challenging worker eligibility guidelines promulgated by the Secretary of Labor for the Trade Readjustment Allowance ("TRA") program of the Trade Act of 1974 (the "Act" or "Trade Act"). 19 U.S.C. Sec. 2101 et seq. (1976 ed.). The District Court found that the guidelines conflicted with section 231 of the Trade Act and with the Vietnam Era Veterans' Readjustment Act of 1972 (Veterans' Act of 1972), 38 U.S.C. Sec. 2011 et seq. (1982). The trial court ordered the Secretary to modify his over-restrictive interpretation of the Trade Act; to eliminate the conflict with the Veterans' Act of 1972; and to direct cooperating state agencies to take specific steps to correct past and present errors in the administration of the program. UAW v. Donovan, 568 F.Supp. 1047, 1058-59 (D.D.C.1983).
 
 
 2
 On appeal, this court found that the UAW lacked standing to bring this action, and that the claims of the individual named plaintiffs should be dismissed for failure to join cooperating state agencies, UAW v. Donovan, 746 F.2d 839, 842, 843-44 (D.C.Cir.1984); the Supreme Court, in turn, reversed and remanded for further proceedings. UAW v. Brock, --- U.S. ----, ----, 106 S.Ct. 2523, 2533-34, 91 L.Ed.2d 228 (1986).
 
 
 3
 Years of procedural wrangling finally at an end, we turn to the substance of appellees' claims. We affirm the District Court's reading of the Trade Act, reverse its holding that the Secretary's guidelines conflict with the Veterans' Act of 1972, and modify its remedial order.
 
 I. BACKGROUND
 
 4
 The Trade Act of 1974, 19 U.S.C. Sec. 2101 et seq. (1976 ed.), establishes a program of "trade readjustment allowances" to assist American workers who have lost their jobs to competition from abroad. Id. Secs. 2291-95. The 1974 Act endeavored to correct the shortcomings of a similar program that had been enacted in the Trade Expansion Act of 1962. See S.REP. No. 93-1298, 93d Cong., 2d Sess. 131 (1974), U.S.Code Cong. & Admin.News 1974, pp. 7186, 7273. The new program contained "eased qualifying criteria and a streamlined petitioning process," designed to ensure that displaced workers actually received the benefits to which they were entitled. Id.
 
 
 5
 Before a displaced worker may receive TRA benefits under the 1974 Act, two hurdles must be cleared. The Secretary of Labor must first certify that the worker's firm has been adversely affected by foreign competition. 19 U.S.C. Secs. 2271-73. After certification, employees of the firm who have lost their jobs to competition may apply for TRA benefits under the eligibility guidelines set out in the Act and in regulations promulgated by the Department of Labor. Id. Sec. 2291; 29 C.F.R. Sec. 91.6 (1976 ed.). Cooperating state agencies serve as "agents" of the United States in processing applications, determining whether individuals satisfy eligibility requirements and disbursing readjustment allowances. 19 U.S.C. Sec. 2311(a) & (d) (1976 ed.).
 
 
 6
 Section 231 of the Trade Act sets out the principal worker eligibility requirements for the program. To qualify for TRA benefits a worker must have "had, in the 52 weeks immediately preceding ... separation, at least 26 weeks of employment at wages of $30 or more a week in adversely affected employment with a single firm or subdivision of a firm." 19 U.S.C. Sec. 2291(2). In a 1975 policy handbook distributed to cooperating state agencies, the Secretary interpreted the term "employment" in section 231 to exclude
 
 
 7
 [p]eriods in which service is not being performed, such as leave of absence, sick or annual leave or vacation leave, and periods in which service is being performed for other than the adversely affected employer, such as military service, temporary loan or detail to another employer, or work for another employer while attached to the adversely affected employer....
 
 
 8
 Department of Labor Manpower Administration Handbook No. 315, ch. 1, p 9 (July 1975) ("Handbook"). On August 20, 1981, plaintiffs filed suit challenging this interpretation on grounds of inconsistency with section 231 of the Trade Act and with the Veterans' Acts of 1972 and 1974.[1]
 
 
 9
 The District Court, relying on the fact that the Secretary had threatened to cut off funding to state agencies that failed to follow the Handbook interpretation, concluded that the Secretary's interpretation had a sufficiently conclusive effect on state administration of the TRA program to make the issue justiciable. 568 F.Supp. at 1051. The court went on to find that the Secretary's interpretation, which excluded paid time-off from the definition of employment, conflicted with the congressional purpose underlying section 231 of the Trade Act. Id. at 1055-56. The District Court also found that, to the extent that the Handbook requires the state agencies to include weeks of military service in the 52-week "qualifying period," the Secretary's interpretation conflicted with section 2013 of the Veterans' Act of 1972, which requires periods of military service to be disregarded for employment rights purposes. Id. at 1057; 38 U.S.C. Sec. 2013 (1982). The court found no conflict, however, between the Handbook interpretation and the Veterans' Reemployment Rights Act of 1974. 568 F.Supp. at 1056-57.[2]
 
 
 10
 The Secretary appealed the judgment of the District Court. A divided panel of this court found that the UAW lacked standing to bring the action, and that the action brought by the individual named plaintiffs should be dismissed for failure to join the cooperating state agencies. UAW v. Donovan, 746 F.2d 839, 843-44 (1984). The Supreme Court reversed, finding that the UAW has standing to sue on behalf of its members under settled principles of associational standing, and that the state agencies are not necessary and indispensable parties to an action that directly challenges the Secretary's interpretation of the Trade Act. UAW v. Brock, --- U.S. ----, ----, 106 S.Ct. 2523, 2533-34, 91 L.Ed.2d 228 (1986). In light of this decision and the specific instructions of the Supreme Court, --- U.S. ---- - ---, 106 S.Ct. at 2534-35,[3] we now examine the merits of the District Court's opinion.
 
 II. SECTION 231 OF THE TRADE ACT
 
 11
 The principal dispute before the District Court concerned the UAW's challenge to the Secretary's interpretation of the term "employment" in section 231 of the Trade Act of 1974. Because the Act itself does not define "employment," the District Court decided that the "ordinary meaning" of the term should control, 568 F.Supp. at 1052, relying on American Tobacco Co. v. Patterson, 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982), and found that the term "employment" ordinarily includes weeks of paid vacation or sick leave.[4] The trial court thus had little trouble in concluding that the Secretary's interpretation is clearly at odds with the ordinary meaning of "employment."
 
 
 12
 In arriving at the proper construction of section 231, we must first determine what weight, if any, to give to the Secretary's interpretation. It is sometimes said that the "construction of a statute by those charged with its execution should be followed unless there are compelling indications that it is wrong...." Red Lion Broadcasting Co. v. FCC, 395 U.S. 367, 381, 89 S.Ct. 1794, 1801, 23 L.Ed.2d 371 (1969) (footnote omitted). However, this principle has been clarified by the Supreme Court in recent years to make it clear that "[t]he judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." Chevron U.S.A. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843 n. 9, 104 S.Ct. 2778, 2781 n. 9, 81 L.Ed.2d 694 (1984).
 
 
 13
 The principal charge of a court in statutory construction is to ascertain congressional intent. "If a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." Id. In performing this responsibility, "courts may substitute their interpretation of a statute for that of an agency whenever they face 'a pure question of statutory construction for the courts to decide,' rather than a 'question of interpretation [in which] the agency is required to apply [a legal standard] to a particular set of facts.' " I & NS v. Cardoza-Fonseca, --- U.S. ----, ----, 107 S.Ct. 1207, 1225, 94 L.Ed.2d 434 (1987) (Scalia, J., concurring in the result) (quoting majority op. at 1220-21). The courts need not defer to agency opinions on "pure questions" of interpretation. In those circumstances, however, in which an agency is required to apply a legal standard to a particular set of facts, "the courts must respect the interpretation of the agency to which Congress has delegated the responsibility for administering the statutory program." Id. at 1221-22. In these situations, because the court is not faced with a "pure question of statutory construction," some deference is due the agency, and the two-prong test of Chevron applies:
 
 
 14
 First, always, is the question whether Congress has directly spoken to the precise question at issue. If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress. If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation. Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.
 
 
 15
 Chevron, 467 U.S. at 842-43, 104 S.Ct. at 2781-82 (footnotes omitted).[5]
 
 
 16
 Chevron and Cardoza-Fonseca, together, guide our analysis of section 231 and the Secretary's Handbook interpretation. Because the definition of "employment" in the Trade Act involves a "pure question of statutory construction," we are required to turn to "traditional tools" of interpretation to discover Congress' intent as to its meaning. Cardoza-Fonseca, 107 S.Ct. at 1220-21. In so doing, we are convinced, as was the District Court, that the Secretary's interpretation of "employment" conflicts with the intent of Congress.[6]
 
 
 17
 First, the District Court found, correctly, that the "ordinary meaning" of "employment" is powerful evidence of the intent of Congress and of the unreasonableness of the Secretary's interpretation. See American Tobacco Co., 456 U.S. at 68, 102 S.Ct. at 1537.[7] As appellees note, an employee who is on vacation from his job certainly is not perceived by anyone to be "unemployed." This simple point serves to emphasize that common usage of the term "employment" unquestionably supports appellees' construction of the statute.
 
 
 18
 Second, the history of the Trade Act provides further strong support for that construction. Congress enacted the Trade Readjustment Allowance portions of the 1974 Trade Act precisely because a previous version of the program had collapsed under the weight of overly-restrictive eligibility requirements. See United Automobile Workers v. Marshall, 584 F.2d 390, 395 (D.C.Cir.1978). The Senate Report to the 1974 Act makes Congress' concern abundantly clear. In the first seven years of the TRA program, established by the Trade Expansion Act of 1962,[8] not a single worker qualified for assistance, and in the following four years only a few thousand received benefits. S.Rep. No. 93-1298, 93d Cong., 2d Sess. 131 (1974), U.S.Code Cong. & Admin.News 1974, pp. 7186, 7273. Congress acted to remedy this situation with "eased qualifying criteria and a streamlined petitioning process." Id.
 
 
 19
 The District Court found in this legislative history a congressional " 'mood' of largesse" for the Trade Readjustment Allowance aspects of the 1974 Act. 568 F.Supp. at 1053. We agree. Congressional frustration with the slow and ineffectual distribution of TRA benefits under the 1962 Act undoubtedly motivated the 1974 program reforms and general loosening of worker eligibility requirements. See S.Rep. No. 93-1298, 93d Cong., 2d Sess. 131, 135 (1974), U.S.Code Cong. & Admin.News 1974, pp. 7273, 7275. Moreover, the District Court's consideration of Congress' broad remedial effort in evaluating the permissibility of the Secretary's interpretation of the 1974 Act was entirely appropriate. As Justice Frankfurter observed in Universal Camera Corp. v. NLRB, 340 U.S. 474, 487, 71 S.Ct. 456, 463, 95 L.Ed. 456 (1951), a legislative "mood" may be relevant in assessing congressional intent:
 
 
 20
 It is fair to say that in all this Congress expressed a mood. And it expressed that mood not merely by oratory but by legislation. As legislation that mood must be respected, even though it can only serve as a standard for judgment and not as a body of rigid rules assuring sameness of application. Enforcement of such broad standards implies subtlety of mind and solidity of judgment.
 
 
 21
 Finally, the practical effect the Secretary's interpretation on the administration of TRA benefits graphically demonstrates the absurdity of the agency's construction. It is well-understood that statutes must be construed so as to avoid illogical or unreasonable results. American Tobacco Co., 456 U.S. at 71, 102 S.Ct. at 1538. But we could not possibly adhere to this principle of statutory construction if we were to subscribe to the Secretary's definition of "employment." For example, under the Secretary's interpretation, employees who have worked for a company for many years and who have earned extended vacation time could be denied TRA benefits despite their employment seniority. Likewise, a long service employee who is temporarily disabled and receives workers' compensation benefits could be found ineligible even though he has not been terminated by his employer.[9] By contrast, an employee with very little service, say, for example, one who has worked only the 26 weeks immediately prior to being laid off, would be eligible even though his or her career attachment to the firm would be far less significant. There is nothing in the Trade Act to indicate that Congress intended to produce such anomalous results.
 
 
 22
 Congress obviously designed the twenty-six week requirement to ensure that the worker is "genuinely attached" to an affected firm. That purpose plainly is not served by the Secretary's definition of "employment." Although, as a technical matter, a person on vacation is not receiving wages for work presently being performed, but, rather, is receiving payments and time-off for work already performed, it does not follow that a person who is on vacation is "unemployed." The Secretary's construction would make sense only if there was a congressional policy in favor of limiting TRA benefits. We find no evidence of such a policy.
 
 
 23
 The Secretary argues that any interpretation of the Act will produce some inequitable results.[10] For example, he says that it would be inequitable to allow a worker with paid leave to qualify while disallowing a worker on unpaid leave. However, although the Secretary is correct that each is equally attached to his firm, in one case the requirement of wages of at least $30 is met, while in the other case it is not. So, the "anomaly" appears to be a deliberate choice made by Congress in setting a wage as well as an employment requirement. By contrast, the anomalies caused by the Secretary's interpretation have no basis in the statute.
 
 
 24
 Although the meaning of "employment" in section 231 appears clear, the Secretary advances two additional arguments to justify his non-literal reading of the statute. First, he argues that he has consistently adhered to this reading of the statutory language since 1962, and Congress did not attempt to change the interpretation until 1981. Accordingly, the Secretary argues that we ought to defer to his interpretation. The fact that the Secretary has been consistent in construing the provision is only relevant to the extent the interpretation is reasonable. It is not. For one thing, the Secretary cannot reconcile his interpretation with the broad remedial and reform-minded purpose of the 1974 Act. Furthermore, he does not demonstrate that Congress was in any way aware of the interpretation he advances as "ratified." Finally, he does not point to any affirmative step taken by Congress that indicates an intent to ratify the agency's interpretation of "employment." See SEC v. Sloan, 436 U.S. 103, 121, 98 S.Ct. 1702, 1713, 56 L.Ed.2d 148 (1978) ("We are extremely hesitant to presume general congressional awareness of the Commission's construction based only upon a few isolated statements in the thousands of pages of legislative documents."); Northern Colorado Water Conservancy District v. FERC, 730 F.2d 1509, 1520 (D.C.Cir.1984); Association of American Railroads v. ICC, 564 F.2d 486, 493 (D.C.Cir.1977) ("Congress must not only have been made aware of the administrative interpretation, but must also have given some 'affirmative indication' of such intent [to ratify].") (citing Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431-32, 75 S.Ct. 473, 476-77, 99 L.Ed. 483 (1955)). Given these yawning gaps in the Secretary's reasoning, we cannot find that Congress in 1974 ratified any prior interpretation of the term "employment" in these statutes.
 
 
 25
 Second, the Secretary submits that Congress' action in 1981 amending the terms of the Trade Act is evidence that the 1981 Congress accepted his previous interpretation as the correct one.[11] He argues that the 1981 Congress had "no recollection" of any "mood of largesse" in the 1974 Act, and that it actually liberalized TRA eligibility because it still considered the 1974 Act to be too strict. Brief of Appellant at 17. This argument is utterly unpersuasive. A prodigious body of law establishes that "the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." Jefferson County Pharmaceutical Ass'n v. Abbott Laboratories, 460 U.S. 150, 165 n. 27, 103 S.Ct. 1011, 1021 n. 27, 74 L.Ed.2d 882 (1983), quoting United States v. Price, 361 U.S. 304, 313, 80 S.Ct. 326, 331, 4 L.Ed.2d 334 (1960); see also Oscar Mayer & Co. v. Evans, 441 U.S. 750, 758, 99 S.Ct. 2066, 2072, 60 L.Ed.2d 609 (1979); SEC v. Capital Gains Research Bureau, 375 U.S. 180, 199-200, 84 S.Ct. 275, 286-87, 11 L.Ed.2d 237 (1963). Even if subsequent legislative history carried substantial probative weight, we find nothing in the Secretary's evidence that casts even a flickering shadow of doubt upon the broad remedial purpose of the 1974 Congress.
 
 
 26
 The actual language of the statute, the clear remedial purpose of the 1974 Congress, and the demonstrably unreasonable results that flow from the Secretary's definition of "employment" make clear that his interpretation of section 231 of the Trade Act conflicts with congressional intent. Because the Secretary's interpretation can find no support in the statute or its legislative history, and because it is so thinly justified as to be unreasonable, we reject it as an invalid construction of the Trade Act.
 
 III. THE VETERANS' ACT OF 1972
 
 27
 Section 2013 of the 1972 Veterans' Act provides that military service "shall be disregarded in determining the needs or qualifications of participants in any ... employment or training (or related) program financed in whole or in part with Federal funds." 38 U.S.C. Sec. 2013 (1982). So, if the TRA benefits program is an "employment or training (or related) program," time spent in military service must be "disregarded" in determining eligibility under the program. The Secretary argues that, even assuming that section 2013 applies to the TRA program, he has never instructed the state agencies that military service should not be disregarded.
 
 
 28
 The Secretary is correct when he says that the Handbook cannot sensibly be read to instruct state agencies not to disregard military service. The only language that the UAW can point to is the directive that the twenty-six weeks of employment must be "in the 52-calendar-week period immediately preceding the workers' last ... separation from employment." Handbook, Appendix 168. Except for the insertion of the word "calendar," however, this language tracks the statutory language. The Secretary suggests persuasively that the word "calendar" modifies the word "week" so as to make clear that a week is intended to begin on a Sunday and end on a Saturday. In order to make clear that military service is to be disregarded, the Secretary would have to add language not in the statute into the Handbook; the omission of the word calendar would not make the treatment of military service any more or less clear than the statute reads.
 
 
 29
 Because the Secretary did not give the state agencies instructions expressing any particular position on the 1972 Veterans' Act, we find that he has in no way violated the provisions of that Act. Therefore, we reverse the District Court's opinion and remedial order on this point.
 
 IV. APPROPRIATE REMEDY
 
 30
 Having found that the Secretary's Handbook conflicts with congressional intent and unreasonably interprets section 231 of the Trade Act of 1974, we turn finally to the question of appropriate remedy. The parties have argued at length over the validity of the District Court's remedial order. Most of the arguments made, however, have failed to grasp the essential character of the relief the District Court may properly grant under the circumstances of this case.
 
 
 31
 First, it is critical to recognize that the appellees' suit presents claims solely against the Secretary of Labor. There are no other defendants in this law suit. As a consequence, the remedial orders of the District Court cannot extend beyond the bounds of the Secretary's authority under the Trade Act.
 
 
 32
 Second, any power that the District Court may have over the nonparty state agencies is merely a function of the Secretary's authority over those agencies under the Trade Act. The District Court's remedial order can extend that far, but no farther. For example, as the states administer the TRA program as "agents" of the United States, 19 U.S.C. Sec. 2311(a) (1982), the District Court's order requiring the Secretary to modify certain directives to the state agencies was entirely appropriate. See UAW v. Brock, --- U.S. at ----, 106 S.Ct. at 2534 ("[w]e have little doubt that the state agencies ... would obey the Secretary's directive....").
 
 
 33
 Third, we can find no basis for a remedial order that seeks to compel the reconsideration of final judgments rendered in state judicial or administrative forums. The Trade Act is quite explicit that individual TRA benefit determinations are for the state courts to decide according to the procedural requirements of state law. 19 U.S.C. Sec. 2311(d) (1982). Thus, once the Secretary has issued new guidelines and directives setting forth the correct interpretation of section 231 of the Trade Act, it will be for the state courts to determine whether and to what extent previously litigated cases may be subject to reconsideration under state law. In other words, in this case, given the express mandate of the Trade Act regarding the administration and enforcement of the TRA program, the District Court need not concern itself with questions of res judicata or finality with respect to judgments rendered on individual claims in state judicial or administrative forums. Rather, the District Court's order should focus solely on the Secretary's directives to the state agencies, and to the responsibilities of the state agencies insofar as they act as "agents" of the Secretary in administering the Trade Act.
 
 
 34
 We affirm the District Court's judgment that the Secretary's definition of "employment" in section 231 of the Trade Act is based on an invalid construction of the statute. On remand, the District Court should direct the Secretary to promulgate a new definition that comports with congressional intent as found in the foregoing opinion, and then advise the state agencies of the correct interpretation of the statute. The trial court should also direct the Secretary to order agency officials to take appropriate action to enforce this correct interpretation of the statute in pending and future cases, and, consistent with state law, to correct any erroneous eligibility determinations that may have occurred as a result of his incorrect interpretation.
 
 
 35
 Affirmed in part and reversed and remanded in part.
 
 
 
 [1]
 In 1981 Congress amended the Trade Act to address whether paid vacation time, annual leave, disability leave, and the like should come within the definition of "employment." See Sec. 2503 of the Omnibus Budget Reconciliation Act of 1981, 19 U.S.C. Sec. 2291 (1982), Pub.L. No. 97-35, 95 STAT. 881. As discussed below, we do not feel this amendment materially affects the proper analysis of the issues presented here. See p. 767 & n. 11, infra
 
 
 [2]
 The UAW has not appealed the District Court's decision on the 1974 Veterans' Act challenge
 
 
 [3]
 "It remains for the Court of Appeals to consider the merits of the District Court's decision and any procedural issues properly preserved and raised." --- U.S. at ----, 106 S.Ct. at 2534
 
 
 [4]
 "Average weekly wage" in the Trade Act is defined to include:
 the average hours worked by the individual ... in the 52 weeks (excluding weeks during which the individual was sick or on vacation) preceding the week specified....
 19 U.S.C. Sec. 2319(5). The UAW argues that if weeks of vacation or sick leave did not fall within the definition of employment, the parenthetical comment in Sec. 2319(5) would be unnecessary. Though this argument has some logical force, it is insufficient, by itself, to demonstrate a clear congressional intent as to the meaning of "employment" in Sec. 231.
 
 
 [5]
 In Cardoza-Fonseca, Justice Stevens (who also wrote the opinion for the Court in Chevron ) strongly indicates that the interpretation of a statutory provision remains "a pure question of statutory construction for the courts to decide" even when the provision at issue admits of some ambiguity. 107 S.Ct. at 1220-21. Thus, the second prong of the Chevron test is only applicable with respect to circumstances when an agency is required to apply a legal standard to a particular set of facts, or when a court is unable to discern congressional intent after employing traditional tools of statutory construction
 
 
 [6]
 Even if the issue at hand were not a "pure question of statutory construction," or if the intent of Congress were less clear, our review of the Act and its history demonstrates that the Secretary has interpreted Sec. 231 unreasonably. His interpretation therefore would be invalid under the second prong of the Chevron analysis as well
 
 
 [7]
 The District Court found support for appellees' position in Social Security Board v. Nierotko, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718 (1946). 568 F.Supp. at 1055-56. In Nierotko, the Supreme Court held that "employment" under the Social Security Act, defined as "any service ... performed by an employee for his employer," includes periods for which back pay has been awarded, even if the employee did not actually perform work during that period. Id. at 364, 66 S.Ct. at 640. By analogy, the same might hold true under the Trade Act for periods of paid leave from work. While Nierotko presents a helpful example of the Supreme Court's approach to the general problem posed in this case, it cannot by itself determine the proper result here. The purpose and administration of the Social Security Act are sufficiently different from those of the TRA program to make direct analogy a risky venture. Therefore, while we note that Nierotko has some bolstering effect on appellees' case, we do not find it necessary or appropriate to rely on the case to reach the judgment made here
 
 
 [8]
 Pub.L. No. 87-794, 76 STAT. 872
 
 
 [9]
 Appellee de la Cruz is apparently in precisely this position, having suffered an industrial injury that placed him on workers' compensation for more than 26 weeks in the year prior to his release from employment. Under the Secretary's interpretation of the Trade Act, therefore, Mr. de la Cruz was ineligible for TRA benefits, despite two and a half years of prior employment with the firm for which he sustained his injury. See Brief of Appellees at 16 n. 9
 
 
 [10]
 In some respects, the Secretary's argument borders on the suggestion that an agency's interpretative or legislative rules are entitled to the same respect that we accord congressional enactments. Such a view finds no support in the law. See, e.g., Motor Vehicle Mfrs. Ass'n v. State Farm Mut., 463 U.S. 29, 43 n. 9, 103 S.Ct. 2856, 2866 n. 9, 77 L.Ed.2d 443 (1983), where the Supreme Court made it clear that the judiciary should "not view as equivalent the presumption of constitutionality afforded legislation drafted by Congress and the presumption of regularity afforded an agency in fulfilling its statutory mandate." Id
 
 
 [11]
 On August 13, 1981, the Omnibus Budget Reconciliation Act of 1981 ("OBRA"), Pub.L. No. 97-35, 95 STAT. 357 et seq., was enacted. Section 2503 of OBRA, 19 U.S.C. Sec. 2291 (1982), amended the Trade Act to provide that a limited number of weeks of compensated leave, including "leave for purposes of vacation, sickness, injury, maternity, or inactive duty or active duty military service for training," were to be included in determining an employee's period of employment for TRA benefit eligibility. This provision was made effective for TRA benefits "payable for weeks of unemployment which begin after September 30, 1981." OBRA Sec. 2514(A)(2)(B), 29 U.S.C. Sec. 2291 note