**CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, et al., Plaintiffs–Appellants,**

v.

**ART PAPE TRANSFER, INC., Defendant–Appellee.**

**No. 95–2475.**

United States Court of Appeals, Seventh Circuit.

Argued Feb. 16, 1996.

Decided March 27, 1996.

Terence G. Craig (argued), Central States, Southeast & Southwest Area Pension Fund, Rosemont, IL, David A. Sawyer, Russell N. Luplow and David Machnacki, Bloomfield Hills, MI, for Plaintiffs–Appellants.

Edward M. Kay, James T. Ferrini (argued), James S. Barber, Susan Condon, Imelda Terrazino and Amy C. Scalise, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, IL, for Defendant–Appellee.

Before EASTERBROOK, RIPPLE, and EVANS, Circuit Judges.

EASTERBROOK, Circuit Judge.

Ringle Express, a motor carrier, withdrew from the Central States Pension Fund in 1985, incurring about $2¼ million in withdrawal liability under the Multiemployer Pension Plan Amendments Act, which is codified as part of the Employee Retirement Income Security Act. Withdrawal liability under ERISA and the MPPAA extends beyond the employer that contributed to a plan. All "trades or businesses (whether or not incorporated) which are under common control shall be treated as a single employer". 29 U.S.C. § 1301(b)(1). See generally *Central States Pension Fund v. Sherwin–Williams Co.*, 71 F.3d 1338 (7th Cir.1995). Until shortly before the withdrawal, Ringle's owner was McGriff Corporation. In August 1985 McGriff sold all of its stock in Ringle to Dixiana of Georgia, which was therefore Ringle's parent at the time of withdrawal. Both McGriff and Dixiana of Georgia were part of Ringle's control group under the terms of ERISA. The Pension Fund commenced an action against McGriff Corp., Machinery Trailers, Inc., Robert L. McGriff, and three of his children, to recover what Ringle owed. In 1992 the Pension Fund, the two corporations, the three children, and Robert McGriff's estate compromised the withdrawal claim for $800,000. The Pension Fund released

> the McGriffs and all members of any group of trades or businesses under common control with Ringle within the meaning of Section 4001(b)(1) of ERISA, 29 U.S.C. § 1301(b)(1), and the regulations promulgated thereunder, from any and all rights, claims, actions, causes of action, suits, contracts, agreements and demands whatsoever and however arising ... which the Pension Fund may now have or may have after the signing of this Agreement, arising out of or in any way connected with (a) the Ringle Withdrawal Liability, (b) the complete withdrawal by Ringle from the Pension Fund, (c) the Federal Court Case and (d) Ringle's participation in or contributions to the Pension Fund.

A separate clause states that the settlement inures to the benefit not only of the parties but also of "related corporations."

█ Having got what it could from one set of investors, the Pension Fund turned to Dixiana of Georgia. In 1986 the business of this firm was taken over by Dixiana of Iowa. The Pension Fund alleges, and we assume, that Dixiana of Georgia and Dixiana of Iowa are alter egos—which is to say, different names for the same venture. In 1991 Dixiana of Iowa was acquired by Art Pape Transfer, the surviving corporation in a merger of the two firms. Now the Pension Fund seeks to collect Ringle's remaining withdrawal liability from Art Pape Transfer—which responded by invoking the Pension Fund's release. The district court thought this defense compelling and granted summary judgment against the Pension Fund.

We held in *Lumpkin v. Envirodyne Industries, Inc.*, 933 F.2d 449, 457 (7th Cir.1991), that in litigation under ERISA a release of one defendant does not extinguish the claim. Following *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 347, 91 S.Ct. 795, 810, 28 L.Ed.2d 77 (1971), an antitrust case, we adopted this rule: "[A] party releases only those other parties whom he intends to release." The 1992 settlement agreement contains an integration clause, making its bargaining history irrelevant in the absence of some ambiguity—of which there is none. The 1992 settlement releases "any group of trades or businesses under common control with Ringle" and adds that any "related" corporation can take advantage of the agreement's terms. Dixiana of Georgia and its successors in interest were "under common control with Ringle" as ERISA defines that term. Indeed, it is only the "common control" that makes Dixiana of Georgia (and thus Art Pape Transfer) potentially liable. If there is common control, then there may be liability but the release blocks recovery; and if there is no "common control," then

**653**

there is no release, but also no liability. Art Pape Transfer wins either way.

Trying to dig out of this hole, the Pension Fund maintains that ERISA is not the source of Art Pape's liability. Instead, according to the Fund, the alter-ego status of the two Dixianas leads to liability under state law. For this it relies on the observation in *Lumpkin* that under Illinois law alter-ego status is a theory of liability rather than a defense to liability. Now we doubt that *Lumpkin* has much to do with the Pension Fund's claim against Art Pape Transfer. We held in *Lumpkin* that the buyer of assets encumbered with a substantial pension funding shortfall could not escape responsibility by claiming to be the alter ego of the seller, which had settled with the fund. 933 F.2d at 459–63. The settlement agreement in *Lumpkin* did not release the buyer, and we were skeptical of the buyer's attempt to pierce *its own* corporate identity to take advantage of the release. Other cases likewise rebuff efforts by corporations to disregard their separate identity. E.g., *Citizens Electric Corp. v. Bituminous Fire & Marine Insurance Co.*, 68 F.3d 1016, 1021–22 (7th Cir.1995); *Mark I, Inc. v. Gruber*, 38 F.3d 369 (7th Cir.1994); *In re Kubly*, 818 F.2d 643 (7th Cir.1987). It hardly follows that "alter ego" is a magical phrase that brings liability down on the head of a corporation; for that, one needs a concrete theory. One such theory (control group liability) comes from ERISA but runs smack into the release; and a theory with roots in state corporate law would have trouble explaining why Dixiana of Georgia is liable for Ringle's debt to the Pension Fund. Illinois, whose law the Pension Fund believes applies, keeps liability strictly within the corporate boundary unless a failure to respect corporate formalities has combined with a fraud or other wrongdoing to produce inequity. See *Sea–Land Services, Inc. v. Pepper Source*, 941 F.2d 519 (7th Cir.1991) (Illinois law). The Pension Fund does not contend that Ringle Express and Dixiana of Georgia failed to keep separate books or otherwise disregarded the necessary formalities, let alone that the separate corporate existence perpetrated a fraud on unsuspecting creditors.

The Pension Fund filed this suit under the federal-question jurisdiction of 28 U.S.C. § 1331, supplemented by 29 U.S.C. § 1132(e), (f), § 1451(c), which allow the federal courts to enforce ERISA. If as the Fund now argues the real source of liability is a veil-piercing approach under state corporate law, then neither § 1331 nor ERISA supplies jurisdiction. So the Supreme Court held in *Peacock v. Thomas*, —— U.S. ——, 116 S.Ct. 862, 133 L.Ed.2d 817 (1996), another case in which the plaintiff sought to use a veil-piercing theory to hold an investor liable for corporate debts created by ERISA. The record in this case does not reveal the citizenship of the Fund's trustees, and therefore it does not support adjudication under the diversity jurisdiction. Supplemental jurisdiction under 28 U.S.C. § 1367 might have supported decision had the state-law theory been raised in the district court, but it was not. For the Pension Fund to get anywhere, we would have to remand the case for adjudication of a state law claim not previously presented, one that lacks any visible factual or legal means of support, and that the district judge would proceed to address long after the claim based on federal law had vanished. That would not be a prudent use of the supplemental jurisdiction, if indeed it would even be a permissible one—for, as the Pension Fund has recharacterized its argument, it *never* had a federal claim, and there was therefore no federal jurisdiction to which the state claim could be pendent.

All things considered, it is best to resolve this case the way the Pension Fund initially presented it: as a claim based on control-group liability under ERISA. That claim has been released. State-law theories were not timely presented, and we therefore need not wade into the jurisdictional thicket (let alone call on the parties to supplement the record under 28 U.S.C. § 1653 to see whether there might be complete diversity of citizenship). The district court correctly resolved the only claim presented to it, and its judgment is therefore

AFFIRMED.