Stephen **BRIDGE**, William Close, Otis Cross, Michael Faucher, John McCormick, John Naughton, Robert Persak and Gerald Zero, as Trustees of the Local 705 International Brotherhood of Teamsters Pension Trust Fund, Plaintiffs.

v.

**WRIGHT INDUSTRIES, INC., Defendant.**

No. 96 CV 8113.

United States District Court, N.D. Illinois, Eastern Division.

Feb. 20, 1998.

---

Barbara J. Hillman, Robert A. Seltzer, Cornfield & Feldman, Chicago, IL, for Plaintiffs.

Michael Alexander Strautmanis, Kerryann Marie Haase, Michael, Best & Friedrich, Chicago, IL, Steven Jay Teplinsky, Donald Joseph Vogel, Michael Best & Friedrich, Chicago, IL, for Defendant.

## MEMORANDUM AND ORDER

MANNING, District Judge.

This case centers around whether defendant Wright Industries, Inc. ("Wright"), which is the parent company of Edward J. Meyers Company ("Meyers"), is liable for withdrawal liability assessed against Meyers under the Employee Retirement Income Security Act of 1994 ("ERISA"), as amended by the Multiemployer Pension Plan Amendment Act of 1980 ("MPPAA"), 29 U.S.C. § 1001, *et*

*seq.* Plaintiffs Stephen Bridge, William Close, Otis Cross, Michael Faucher, John McCormick, John Naughton, Robert Persak, and Gerald Zero, as the Trustees of the Local 705 International Brotherhood of Teamsters Pension Trust Fund (the "Pension Fund"), have filed suit against Wright pursuant to ERISA to compel payment of withdrawal liability, interest, liquidated damages, and attorneys' fees and costs.

The plaintiffs' motion for summary judgment pursuant to Fed.R.Civ.P. 56 is before the court. For the following reasons, the *motion is granted.* Wright is liable, however, for delinquent withdrawal payments plus future installment payments, rather than the accelerated entire amount of Meyer's withdrawal liability, plus interest, statutory liquidated damages, and attorneys' fees and costs.

### Background

The essential facts are undisputed. The Pension Fund is a multiemployer benefit plan within the meaning of ERISA, 29 U.S.C. §§ 1002(3) & (37), 1301(a)(3).[1] The plaintiffs are trustees of the Pension Fund and are fiduciaries within the meaning of ERISA, 29 U.S.C. § 1002(21). The Pension Fund maintains its principal place of business in Chicago, Illinois. Wright is the parent corporation of Meyers. Meyers maintained its principal place of business in Summit, Illinois, and was an employer within the meaning of ERISA, 29 U.S.C. § 1002(5). Wright maintains its principal place of business in Summit, Illinois, and is an employer within the meaning of ERISA, 29 U.S.C. § 1002(5). Local 705, International Brotherhood of Teamsters, Chauffeurs, Warehousemen, and Helpers of America ("Local 705"), is an employee organization within the meaning of ERISA, 29 U.S.C. § 1002(4).

Pursuant to the terms of the collective bargaining agreement with Local 705, Meyers was a contributing employer to the Pension Fund. Meyers ceased operations in July, 1994, and thus permanently ceased to have an obligation to contribute to the Pension Fund, thereby effecting a "complete withdrawal" from the Pension Fund under ERISA. 29 U.S.C. § 1383 In December, 1994, the Pension Fund sent a notice and demand for payment of withdrawal liability

pursuant to ERISA, 29 U.S.C. § 1399(b), advising Meyers that the amount of its withdrawal liability was $492,179.69. The Pension Fund gave Meyers the option of paying in a lump sum or making monthly payments beginning in January, 1995, in accordance with a minimum payment schedule. In February, 1995, when Meyers failed to make any payments, the Pension Fund sent another letter notifying Meyers that it was delinquent and that it had 60 days to cure its failure to pay.

Meyers did not make any payments to the Pension Fund in response to this letter. In August, 1995, however, it demanded arbitration regarding the Pension Fund's withdrawal liability assessment. The only issue to be determined in arbitration is whether any entities, other than Meyers and Wright, are also liable for Meyers' withdrawal liability.

In October, 1995, the Pension Fund sent a notice and demand for payment of withdrawal liability to Wright, pursuant to ERISA, 29 U.S.C. § 1399(b), advising Wright that, "[a]s parent company of Edward J. Meyers Company and according member of controlled group," it was responsible for Meyers' withdrawal liability of $492,179.69.

In September, 1996, Meyers filed for bankruptcy under Chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of Illinois, Case No. 95 B 20192. Neither Meyers nor Wright have made any withdrawal liability payments to the Pension Fund for the $492,179.69 withdrawal liability assessed against Meyers for its withdrawal from the Pension Fund.

Wright claims that it cannot make any interim payments because the two pieces of property it owns in Forest View and Summit, Illinois, would have no value upon liquidation due to federal and state tax liens and environmental concerns which preclude a sale in their present condition. In addition, Wright claims that it owes over $400,000 in delinquent real estate taxes on both properties and owes over $200,000 in secured debt on the Summit property. Finally, Wright claims that it generates approximately $8,999 per month in revenue and that it operated at

---

1. The court will cite to the MPPAA, rather than ERISA's internal numbering system.

a $14,619 loss in July, 1997, a $16,163 loss in August, 1997, and an $11,726 loss in September, 1997. Thus, it concludes that it cannot afford to make any interim liability payments.

### Wright's Compliance With Local Rule 12(n)

Local Rule 12(n) requires a party opposing a motion filed pursuant to Fed.R.Civ.P. 56 to include, in its response to the moving party's 12(m) statement, "specific references to the affidavits, parts of the record, and other supporting materials relied upon" in the case of any disagreement. Local Rule 12(n)(3)(a); *Rosemary B. v. Board of Educ. of Community High School*, 52 F.3d 156, 159 (7th Cir. 1995). It also provides that "[a]ll material facts set forth in the statement required by the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 12(n)(3)(b). The only portion of the plaintiffs' 12(m) statement disputed by Wright is the Pension Fund's contention that Wright is liable for Meyer's withdrawal liability. Wright's response to this portion of the Pension Fund's 12(m) statement consists of a simple denial.

Local Rule 12 also requires a party opposing a motion for summary judgment to file "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 12(n)(3)(b). Here, Wright has filed affidavits but no Rule 12(n) statement.

Failure to comply with Rule 12 is not a "harmless technicality." *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 924 (7th Cir.1994). Specifically, under Rule 12(n), a party who does not properly contest the opposing party's Rule 12(m) facts is considered to have admitted those facts. Local Rule 12(n)(3)(b): *Midwest Imports, Ltd. v. Coval*, 71 F.3d 1311, 1312 (7th Cir.1995). Because the basis of Wright's position is clear from the papers and the record is not voluminous, the court will exercise its discretion and reach the merits of Wright's arguments. Wright is admonished, however, to comply with Local Rule 12 in the future.

### The Parties' Positions

The Pension Fund contends that Wright is liable for Meyers' withdrawal liability, payable in one lump sum, as well as interest, statutory liquidated damages, and attorneys' fees and costs because: (1) Wright is the parent corporation of Meyers; (2) the withdrawal payment is due and owing because the Pension Fund issued a notice and demand for payment to Meyers and Wright; and (3) Meyers' initiation of arbitration does not bar this suit.

In response, Wright does not specifically deny that it is responsible for Meyers' withdrawal liability. Instead, it references the arbitration proceedings initiated by Meyers and claims that, to the extent that Meyers is not liable to the Pension Fund, it also is not liable to the Pension Fund. It also contends that the "pay now, dispute later" rule is not absolute, relying on *Robbins v. McNicholas Transportation Co.*, 819 F.2d 682, 685 (7th Cir.1987). Specifically, it argues that the "pay now, dispute later" rule is not a bright-line rule and that this court should decline to order it to make interim payments because it would work a severe financial hardship and cause irreparable harm. Finally, it contends that, at a minimum, there is a question of fact regarding its ability to make interim payments.

### Standard for A Motion For Summary Judgment

Summary judgment is proper when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of any material fact." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The party opposing the summary judgment motion "may not rest upon the mere allegations or denials of the adverse party's pleading"; rather, it must respond with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Valenti v. Qualex, Inc.*, 970 F.2d 363, 365 (7th Cir.1992), *citing Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202

(1986). A court should grant a motion for summary judgment only when the record shows that a reasonable jury could not find for the nonmoving party. *Valenti v. Qualex, Inc.*, 970 F.2d at 365; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248.

### Wright's Liability for Meyer's Withdrawal Liability

ERISA, as amended by the MPPAA, requires that, when an employer withdraws from a multi-employer pension plan governed by ERISA, the plan must assess a withdrawal liability so that the financial burden of the employees' vested pension benefits will not be shifted to the remaining employers in the plan and ultimately shifted to the Pension Benefit Guaranty Corporation, which insures such benefits. *Central States, Southeast and Southwest Areas Pension Fund v. Slotky*, 956 F.2d 1369, 1373 (7th Cir.1992). Thus, when a contributing employer withdraws from a plan, it is liable for a pro rata share of the unfunded benefits the plan owes its employees. 29 U.S.C. §§ 1381 & 1391.

Under ERISA, "employees of trades or businesses (whether or not incorporated) which are under common control shall be treated as employed by a single employer and all such trades or businesses as a single employer." 29 U.S.C § 1301(b)(1). The regulations corresponding to 29 U.S.C. § 1301(b) provide that "parent-subsidiary group[s]" are "trades or businesses" under "common control." *See* 29 C.F.R. § 1.414(c)–2(b).[2] According to the Pension Fund, because it is undisputed that Wright is the parent company of Meyers, it is liable for Meyers' withdrawal liability. The Pension Fund also notes that, because it sent out the required notice and demand for payment to both Meyers and Wright, the withdrawal liability provisions of ERISA have been triggered. 29 U.S.C. §§ 1382 & 1399(b)(1); *Slotky*, 956 F.2d at 1371.

■ Wright does not dispute these propositions but, as noted above, argues that this court should not order it to make interim payments because it cannot afford them. Given the clear language of ERISA and the corresponding regulations, the court agrees with the Pension Fund that, because Wright is the parent company of Meyers, it is statutorily liable for Meyers' withdrawal payments. *See Central States, Southeast and Southwest Areas Pension Fund v. Art Pape Transfer, Inc.*, 79 F.3d 651, 652 (7th Cir. 1996) (owners of corporation are part of control group under ERISA); *see also Central States, Southeast and Southwest Areas Pension Fund v. The Sherwin–Williams Co.*, 71 F.3d 1338 (7th Cir.1995); *Central States, Southeast and Southwest Areas Pension Fund v. Hoosier Dairy, Inc.*, No. 90 CV 3795, 1991 WL 111362 *2 (N.D.Ill. Jun.14, 1991). Thus, the court turns to the parties' arguments regarding whether Meyer's initiation of arbitration or Wright's financial condition entitle Wright to a dispensation from payment.

### The Effect of the Pending Arbitration Initiated by Meyers

■ ERISA includes what is frequently described as a "pay now, dispute later" rule. *See Robbins v. Pepsi–Cola Metro. Bottling Co.*, 636 F.Supp. 641, 677 (N.D.Ill.1986). Specifically, "[w]ithdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor ... beginning no later than 60 days after the date of the demand notwithstanding any request for review or appeal of determinations of the amount of such liability or of the schedule." 29 U.S.C. § 1399(c)(2). 29 U.S.C. § 1401(d) also specifies that "payments shall be made by an employer in accordance with the determinations made under this part until the arbitrator issues a final decision with respect to the determination submitted for arbitration ..." Thus, even if an employer initiates arbitration to contest its liability for withdrawal payments, the employer is neverthe-

---

2. Specifically, 29 C.F.R. § 1.414(c)–2(b) defines "parent-subsidiary" as follows: "(b) Parent-subsidiary groups of trades or businesses under common control—(1) In general. The term 'parent subsidiary group of trades or businesses under common control' means one or more claims of organizations conducting trades or businesses connected through ownership of a controlling interest with a common parent organization if— (i) A controlling interest in each of the organizations is owned ... by one or more of the other organizations; and (ii) The common parent organization owns ... a controlling interest in at least one of the other organizations, excluding, in computing such controlling interest, any direct ownership interest by such other organizations."

less immediately liable for the withdrawal liability payments. *See Chicago Truck Drivers, Helpers and Warehouse Union (Independent) Pension Fund v. Century Motor Freight, Inc.,* 125 F.3d 526, 534 (7th Cir. 1997).

### The Effect of Wright's Financial Condition

The parties dispute whether this court has discretion regarding interim payments, or whether such payments are mandatory. According to the Pension Fund, § 1401(d) is mandatory and leaves the court with no discretion not to order interim payments. In response, Wright argues that there is an equitable exception to the "pay now, dispute" later rule and that its precarious financial condition entitles it to this exception, citing to *Robbins v. McNicholas Transportation Co.,* 819 F.2d at 685. In reply, the Pension Fund counters that the exception in *Robbins* is only available when the employer makes an affirmative showing that the pension fund lacks a colorable or non-frivolous claim. *Trustees of Chicago Truck Drivers, Helpers, & Warehouse Union (Independent) Pension Fund v. Rentar Industries, Inc.,* 951 F.2d 152, 155 (7th Cir.1991).

█ Wright's reading of the Seventh Circuit cases discussing the equitable exception to the "pay now, dispute later" rule is overbroad. As the Seventh Circuit has explained:

> The court's option to consider "the employer's probability of success before the arbitrator, and the gravity of any economic hardship caused by payment of installments while awaiting decision," *McNicholas,* 819 F.2d at 685, is therefore not an invitation to pre-try the case or to excuse

payments by those employers whose precarious financial condition creates the greatest risk to the pension plan.... *McNicholas* is at most a recognition that if the fund's claim is frivolous—if the arbitrator is almost certain to rule for the employer—then the plan is engaged in a ploy that a court may defeat. When an employer is thinly capitalized and could be propelled into bankruptcy by interim payments, an unscrupulous pension plan could squeeze something from the firm without much chance of success before the arbitrator. Having assured itself that the plan's claim is legitimate, however, the court should order the making of interim payments and leave the rest to the arbitrator. *Central Transport,* 935 F.2d at 119. In other words, if a plan has a colorable or non-frivolous claim, the fact that an employer may lack the funds to make payments does not permit a court to give it a pass pending the completion of arbitration.[3]

█ Thus, the payment issue turns on whether Wright has made the required affirmative showing that the Pension Fund lacks a colorable or non-frivolous claim. Wright clearly has not made such a showing. Its only defense to immediate payment is its financial straits. Moreover, the arbitration will not determine whether Wright is liable for Meyers' withdrawal liability. Instead, it will determine whether any other entities are liable along with Wright and Meyer for Meyers' withdrawal liability. Accordingly, the court grants summary judgment in favor of the plaintiffs. The court notes that this is a final judgment, not an injunction. *Trustees of Chicago Truck Drivers, Helpers & Warehouse Union (Independent) Pension Fund v. Central Transport, Inc.,* 935 F.2d 114, 119

---

3. *Cf. Central States, Southeast and Southwest Areas Pension Fund v. National Cement Products Co.,* No. 97 CV 4031, 1998 WL 26186 *3 (N.D.Ill. Jan.16, 1998), which holds that the cited portion of *Central Transport* stands for the proposition that "the court may excuse interim payments if (1) the Pension Fund's claim is frivolous, such that 'the arbitrator is almost certain to rule for the employer,' and if (2) it would cause grave economic harm to the employer to pay interim payments." *National Cement Products,* 1998 WL 26186 *3, *citing Central Transport,* 935 F.2d at 119. This court respectfully parts company with its colleague, Judge Castillo, on its interpretation

of *Central Transport,* as this court believes that *Central Transport* only allows this court to defer payments if the pension fund's claim is not colorable or is frivolous. In any event, the broader reading of *Central Transport* espoused by Judge Castillo would not help Wright. That broader reading allows this court to grant relief only if the claim is not colorable or is frivolous *and* the payment of interim payments would cause grave economic harm to the employer. Because Wright has failed to meet the first part of the *Central Transport* test, the court would not be able to reach its alleged grave economic harm.

(7th Cir.1991) (orders compelling interim withdrawal payments are money judgments).

### Damages

■ The Pension Fund seeks an order awarding the entire amount of withdrawal liability payments, as opposed to withdrawal payments. The Seventh Circuit has recently addressed whether a pension fund is entitled to receive the entire amount of withdrawal liability payments during the pendency of arbitration. *See Chicago Truck Drivers, Helpers and Warehouse Union (Independent) Pension Fund v. Century Motor Freight, Inc.,* 125 F.3d 526 (7th Cir.1997). While the Pension Fund filed its summary judgment motion prior to the issuance of *Century Motor Freight,* neither side subsequently brought this decision to the court's attention. The court reminds counsel that it has a continuing obligation to supplement its memoranda with subsequently issued Seventh Circuit or Supreme Court opinions directly addressing matters at issue.

With that said, the court turns to *Century Motor Freight* and its application to this case, In *Century Motor Freight,* the Seventh Circuit held that accelerated payments must be delayed pending the conclusion of arbitration initiated by the employer regarding its withdrawal obligation to an ERISA multiemployer pension fund. *Century Motor Freight,* 125 F.3d at 533–34. The Seventh Circuit reasoned that, while the plain language of the statute suggests that the fund may accelerate payments if the employer has defaulted, the better reading is that ERISA "conditions acceleration of withdrawal liability on an employer not seeking arbitration." *Id.* at 533. Under *Century Motor Freight,* therefore, the Pension Fund is not entitled to acceleration of the entire amount due.

■ It is, however, entitled to statutory liquidated damages as these damages are "separate from the underlying withdrawal liability itself: they relate to the employer's violation of the 'pay now, arbitrate later' scheme in ERISA." *Id.* at 534–35. In addition, the Pension Fund is entitled to statutory interest, accruing from the due date of each installment payment, and reasonable attorneys' fees and costs. *Id.* at 535.

### Conclusion

For the above reasons, the motion for summary judgment filed by plaintiffs Stephen Bridge, William Close, Otis Cross, Michael Faucher, John McCormick, John Naughton, Robert Persak, and Gerald Zero, as the Trustees of the Local 705 International Brotherhood of Teamsters Pension Trust Fund, [7–1] is granted. Wright is liable, however, for delinquent withdrawal payments plus future installment payments, rather than the accelerated entire amount of Meyer's withdrawal liability. It is also liable for interest, statutory liquidated damages, and attorneys' fees and costs.

Accordingly, Wright is ordered to pay the Pension Fund all delinquent withdrawal liability payments that are owed from January 10, 1995 (the due date of Meyers' first installment payment) plus the greater of either double interest or interest plus liquidated damages and reasonable attorneys' fees incurred by the Pension Fund in connection with this action. Wright is further ordered to pay the Pension Fund the remaining withdrawal liability payments as due under the payment schedule. The Pension Fund shall submit, on or before twenty-one days from the date of the entry of this order, a bill of costs detailing the amount of delinquent withdrawal liability, the amount of interest owed on those contributions, the amount of liquidated damages owed on those contributions, and the reasonable attorneys' fees and costs incurred in connection with this action. Wright may respond to the bill of costs twenty-one days thereafter. The parties are urged to confer and seek agreement regarding the calculations and attorneys' fees.